CLINE v. STUDEBAKER CORPORATION.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION—EVIDENCE—LOSS OF EYE.

In a proceeding under the workmen's compensation act for compensation to a servant of an automobile company for the loss of part of the sight in claimant's right eye, evidence that the cause was a gonorrheal infection after getting a piece of steel in the eye, that the employee had not been affected with the disease, and that an attempt had been made to remove the steel by a fellow workman in the factory, by rolling back the eyelid on a match, that another employee removed the same, and that the eye was normal before the injury, *held*, to support the finding of facts of the Industrial Accident Board that the accident arose out of, or in the course of, his employment.

2. SAME—COMPENSATION FOR PARTIAL LOSS OF EYE.

However, for the partial loss of the sight of claimant's eye, which could be minimized by the use of glasses, so that no diminution of earnings took place, and no impairment

of his earning capacity appeared from the testimony, the board was not authorized to award compensation (section 10, Act No. 10, Extra Session 1912), though without glasses he had only ten per cent. of normal vision but fifty per cent. with them.

Certiorari to the Industrial Accident Board. Submitted April 16, 1915. (Docket No. 146.) Decided December 22, 1915.

Proceedings by Clarence L. Cline, under the workmen's compensation act, against the Studebaker' Corporation and another for the partial loss of an eye. From the award entered, said corporation brings certiorari. Reversed.

*William D. Ellsworth,* for claimant.

*Frederick J. Ward,* for defendants.

PERSON, J. It is claimed in this case that the appellee was injured while working for the defendant manufacturing company, and that the result of such injury was the loss of his right eye. The insurance company carrying the risk and the injured employee entered into an agreement about a month later regarding compensation, of which the material part reads as follows:

"On the 2d day of March, 1913, about 5 o'clock in the morning, the injured was working on a rear axle with another employee. A piece of steel flew and struck injured in the eye. A gonorrheal infection set in, and the injured was obliged to quit work on the morning of March 4, 1913.

"The terms of the agreement follow: It is mutually agreed by and between the parties hereto that the average weekly wage of the injured at the time of the accident was $15 per week, and that the injured is to receive as compensation herein the sum of $7.50 per week, as provided for by the Michigan compensation act."

This agreement was approved by the Industrial Accident Board, whereupon the insurance company paid to the appellee $66.25, and received his receipt as for a full settlement of compensation, subject, however, to the approval of the board. Subsequently, and on the 25th day of October, 1913, the appellee applied for further compensation, and a committee of arbitration was appointed, which decided that he was entitled to the sum of $7.50 per week for 100 weeks from date of the accident. The committee also found that there was due to the appellee at the time of their report the sum of $321.50, less the $66 already paid. Upon appeal to the Industrial Accident Board this decision of the committee of arbitration was affirmed, the board returning the following findings of fact:

"The infection which destroyed the sight of the eye is not reasonably accounted for, except as coming through or resulting from the accident; the applicant himself being free from the disease. The infection may have come from the hands of Mr. Rood when he tried to roll the eyelid back with a match, or from the hands of the nightwatchman when he took a piece of steel from the eye. The eye was normal before the injury, and the inflammation which directly followed the injury caused the damage to the eye."

The objections to the award argued in this court will be considered in their order:

1. That the loss of sight should not be attributed to the accident, but to a disease not in any way connected with the employment.

The fact that a piece of steel flew into claimant's eye in the course of his employment seems fairly well established. His testimony is to that effect, and it is corroborated by his fellow workmen. But it is not shown that this flake of steel directly caused the subsequent impairment of vision; that, on the contrary, must be attributed to the gonorrheal infection. Such is the finding of the board, and the finding is in ac-

cordance with the agreement between the parties. Nor is it probable, from the testimony of the doctors, that the germ which caused the infection was upon the steel itself. They state, however, that such a germ might get into the eye from a towel, from washing utensils, from the straps or rails of a street car, and in similar ways.

The burden is therefore, as insisted by counsel for defendants, upon the claimant to show by a preponderance of evidence that the infection arose out of and in the course of his employment, instead of at some other time and in some other way. In short, under the circumstances, it was for claimant to show that the infection was connected with the accidental entry of the steel into his eye. And in this behalf counsel cite *McCoy* v. *Screw Co.*, 180 Mich. 454 (147 N. W. 572), where the relation between the infection and the employment was held not to have been established. In instances like the present, however, where the claimant himself is personally free from the disease, it is hardly possible that the source of infection can be shown absolutely by direct evidence. Nor is that necessary.

"By a 'preponderance of evidence' is meant such evidence as, when weighed with that opposed to it, has more convincing force, and from which it results that the greater probability is in favor of the party upon whom the burden rests." *Hoffman* v. *Loud,* 111 Mich. 156 (69 N. W. 231).

As has been said, the claimant was himself personally free from the disease up to the time of the accident. Such was the testimony of the doctor who attended him, and the Industrial Accident Board has found it to be a fact; nor does counsel for defendants dispute the correctness of the finding. The gonorrheal germ must have come from some outside source. It must also have been received not later than the time of the accident to have developed into the condition

found by the doctor two days afterwards, according to his testimony. These conditions, in connection with the fact, as shown, that an injured eye is more susceptible to the infection than a normal eye, and with the further fact that at once, after the accident, a fellow workman examined the eye, using for the purpose a match wrapped in a piece of cloth, create a considerable degree of probability that the germ got into the eye in the attempt to remove the steel. And this probability was sufficient to warrant the board in their finding that:

"The infection which destroyed the sight of the eye is not . reasonably accounted for except as coming through or resulting from the accident."

See *Sullivan* v. *Modern Brotherhood*, 167 Mich. 524 (133 N. W. 486, 42 L. R. A. [N. S.] 140, Am. & Eng. Ann. Cas. 1913A, 1116).

If the germ was introduced in an attempt to remove the flake of steel from the eye, it was a direct consequence of the accident, and arose out of and in the course of the employment. The attempt to remove the particle of steel was a natural and necessary result of its entry into the eye; in fact, the proofs in this case seem to fairly establish the element that was lacking in the *McCoy Case*.

2. That the Industrial Accident Board acted without authority of law in allowing claimant $7.50 per week for the period of 100 weeks, even if the infection is found to have arisen out of and in the course of his employment.

The claimant was wholly incapacitated during a period of about 9 weeks, and for that he was paid $66.25, according to his receipt hereinbefore mentioned. He then resumed his work for the same company, in about the same line of employment, and at substantially the same wages he was receiving before the injury. He

does not testify to any impairment of his ability to work, nor to any reduction in wages, because of the loss of eyesight; and it was determined by this court in *Hirschkorn* v. *Desk Co.*, 184 Mich. 239 (150 N. W. 851), that the statute does not award compensation for the partial loss of an eye, except as measured by lessened earnings. Although there is no special finding upon the point, it is evident from the amount allowed that the Industrial Accident Board treated the injury as "the loss of an eye," rather than as a partial loss, and that it made its allowance under the schedule of fixed liabilities contained in section 10 of the act (Act No. 10, Extra Session 1912). Unless, therefore, the award can be sustained on that theory, it must be held to have been unwarranted.

The eye was examined for loss of sight by two experts, who made their tests separately, and in different ways. One aimed to discover how much the claimant could see when using proper eyeglasses, and found that with their assistance he had one-half of his normal vision. The other made his test without glasses, and says that the eye, unaided by artificial means, has lost 90 per cent. of its sight. Neither attempted the other's test, so that the testimony of each stands unquestioned and without impeachment by anything in the record. The net result is that, when using proper glasses, the claimant has 50 per cent. of his sight, while without them he has only 10 per cent. The evidence will not permit of any different conclusion.

Under these circumstances it seems impossible to say that the injury has resulted in the loss of the eye. The use of glasses is a very ordinary occurrence, both by the young and the old. It is unnecessary to determine whether the loss of 90 per cent. of the sight is substantially the loss of the eye, because that is not the present case. Ninety per cent. of the sight is not lost when it can be diminished to 50 per cent. by use

of common appliances. And it is the duty of the sufferer to minimize the injury as much as he reasonably may. We cannot help but feel it unfortunate, however, that further tests of the eye were not made so as to exclude all possible chance of mistake in so important a matter.

The case of *Hirschkorn* v. *Desk Co., supra,* must be held as controlling in this one. The statute seems not to have provided compensation for the partial loss of an eye under the circumstances existing here. That case, however, had not been determined when this matter was before the Industrial Accident Board.

The award must be reversed and set aside.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.

This case, having been submitted on briefs, without oral argument, was reassigned after the death of Justice MCALVAY.