### TRAVELERS' INS. CO. v. RICHMOND.
### (No. 1368.)

(Court of Civil Appeals of Texas. Beaumont. May 11, 1926. Rehearing Denied May 19, 1926.)

1. **Appeal and error** ⊂⇒362(2)—**Writ of error will not be dismissed because petition did not distinctly state grounds on which writ was sought, where appeal was from trial court to Court of Civil Appeals (Rev. St. 1925, arts. 1741, 2257.**

Writ of error will not be dismissed because petition did not distinctly state grounds on which writ was sought, where appeal was from trial court to Court of Civil Appeals, in view of Rev. St. 1925, art. 2257; rule being different than on appeal to Supreme Court from Court of Civil Appeals, under article 1741.

2. **Exceptions, bill of** ⊂⇒13—**Plaintiff in error's bills of exception in civil case relative to certain testimony will be considered, though they state testimony in question and answer form (Rev. St. 1925, art. 2237; Code Cr. Proc. 1925, art. 760).**

Plaintiff in error's bills of exception in civil case relative to certain testimony will be considered, though they state objectionable testimony in question and answer form, in view of Rev. Civ. St. 1925, art. 2237; rule being different in criminal cases, under Code Cr. Proc. 1925, art. 760.

3. **Master and servant** ⊂⇒385(11¼)—**Loss of 99 per cent. vision in eye held compensable as "loss of eye," though vision could be largely restored by glasses (Rev. St. 1925, art. 8306, § 12).**

Workman, who lost 99 per cent. of vision in one eye when lye pump threw lye into it, *held* to have suffered "loss of use of such eye," within Rev. St. 1925, art. 8306, § 12, though, by properly adjusted glasses, vision could be largely restored.

4. **Master and servant** ⊂⇒348.

Workmen's Compensation Acts should be given liberal interpretation.

5. **Master and servant** ⊂⇒405(4)—**Evidence held to show workman suffered loss of eye as result of injury.**

Evidence *held* sufficient to support finding that workman suffered total loss of eye as re-

sult of injury suffered while engaged in furtherance of master's business.

Error from District Court, Jefferson County; Geo. C. O'Brien, Judge.

Suit by the Travelers' Insurance Company against L. D. Richmond to set aside an award of the Industrial Accident Board. Judgment for defendant, and plaintiff brings error. Affirmed.

Todd, Pipkin & Moore, of Beaumont, for plaintiff in error.

Howth, Adams & Hart, of Beaumont, for defendant in error.

O'QUINN, J. This is an appeal from a judgment of the district court of Jefferson county, Tex., upholding an award of the Industrial Accident Board of the state of Texas. On March 8, 1923, the Industrial Accident Board awarded defendant in error compensation at the rate of $15 per week for 100 weeks for the total loss of the sight of the left eye. After due notice, this suit was filed by plaintiff in error to set aside said award. To the petition of plaintiff in error, defendant in error answered by general demurrer and by cross-action. Plaintiff in error replied to defendant in error's cross-action by general denial, and specially that the injuries to defendant in error's eye did not result in total loss of the use of said eye, but that the vision of same was normal, or, if not normal, could be made so by the use of proper glasses; that lenses had been fitted to said eye, resulting in restored normal vision; that plaintiff in error was not liable for compensation by reason of the injury to defendant in error's eye, because the vision of said eye had not been impaired, but that, if same had been impaired, the impairment had been completely corrected by the use of lenses, and the use and vision of said eye was fully restored.

The case was tried to a jury upon special issues, upon the answers to which judgment was rendered for defendant in error for $15 per week for 100 weeks, less the sum of $100.-70, which had theretofore been paid. Motion for new trial was overruled, and the case is before us on writ of error.

[1] At the threshold of the case, we are met with defendant in error's motion to dismiss plaintiff in error's writ, because the petition for the writ of error did not distinctly state the grounds upon which the writ was sought. It is insisted that under article 2257 (2088), Revised Civil Statutes 1925, the petition for writ of error must distinctly state the several grounds on which the writ of error is petitioned—that an assignment or statement of error in general terms does not meet the requirements of the statute and should not be considered. We are cited to a number of cases as supporting this contention, but none of them are in point. They are upon applications for writs of error from the Courts of Civil Appeals to the Supreme Court. In such cases the procedure is controlled by article 1741 (1521—40), which does require that one, desiring to sue out a writ of error before the Supreme Court, shall state in his petition the grounds upon which the writ of error is presented, but article 2257 (2088), which controls the procedure in appealing a case from the trial court to the Court of Civil Appeals by writ of error, does not require the petition for writ of error to state the grounds upon which the writ is sought, but merely that the party appealing desires to remove the case to the Court of Civil Appeals for review and correction. The petition in the instant case fully meets the requirements of the statute, and the motion is overruled.

[2] Defendant in error also objects to our considering plaintiff in error's bills of exception Nos. 5 and 6 relative to the testimony of Dr. Miller, a witness for plaintiff in error, and moves to strike same from the record, because the bills, in stating the portion of said witness' testimony objected to, are in question and answer form. The authorities cited to sustain this contention are all cases construing article 760 (844–846) of the Code of Criminal Procedure of the state, which inhibits the setting out of testimony in bills of exception in question and answer form. This provision is not found in article 2237 (2058–67), Revised Civil Statutes 1925, relative to bills of exception in civil cases. The motions are overruled.

[3] Plaintiff in error's first and second propositions complain that the jury's answers to the first and second special issues are so clearly against the great weight of the evidence as to be manifestly wrong and should not be permitted to stand.

The jury, by their answer to the first special issue, found that defendant in error suffered an injury to his eye while engaged in the furtherance of his master's business, and in answer to the second issue, that such injury resulted in the total loss of the use of his said eye and the sight thereof. The evidence shows that defendant in error, in the course of his employment, while attempting to fix a pump that pumped caustic lye, was injured by the pump throwing lye into his face and eye. The lye took the skin off his mouth, lips, inside of the mouth, and tongue. He was so blinded that he had to be taken to an eye specialist, who treated him for some 11 days, and he was then placed under the treatment of another specialist, who treated him for some 8 months. The injury was received on March 1, 1922. At the time of the trial, January, 1925, he testified:

"As to the condition of my left eye at this time, well, it aiht no good to me, much. It is, practically no good at all. Without glasses, I couldn't tell you (Mr. Hart, counsel for plaintiff) from a negro. Take a person where those

chairs are (indicating) I can't tell who you are with the glasses on with that eye. I am not able to distinguish color at that distance. I guess it is about 8 or 10 feet from me to Mr. White, and with glasses off I can't distinguish colors that close to me. With glasses off, Mr. White would look to my left eye just like a black spot standing there. With glasses on, I can tell who is there, but take him to those chairs yonder (indicating)· I couldn't tell who he was. It is about 20 feet to those chairs. At that distance, with my left eye I couldn't tell who he is. I can see that knife you hold, when I look with my right eye. With my left eye, I can see that you are holding something in your hand, is all; that is, with my glasses on. With my glasses off, which I have removed at your request, I can't see the knife with my left eye. I judge it is about 10 feet from me to your knife, and with my glasses off, I can't see the knife at all with my left eye. That lye hit on my left eye, and for several nights I didn't sleep a wink all night, sitting up with it. I must have sat up four or five nights, and I couldn't sleep a wink; I never suffered so in my life."

Cross-examination:

"I am 43 years old the 17th of this month. I commenced wearing glasses when Dr. Richardson turned me loose. I never did wear glasses before that time. I have never been nearsighted, that I know anything about, and am not nearsighted now, that I know of. As to whether I was nearsighted before the time of this injury, I don't know how far a nearsighted person is supposed to see, but I could see as far as anybody else. * * * The only injury I have now is the loss of the vision to my eye. ∗ * * I have been working since that time, on the same job, and am on the same job now, drawing the same rate of pay. I think the insurance company paid me $100.70, the best I can remember, and, in addition to that, they had my eyes treated, and that didn't cost me anything."

Dr. Miller, an eye specialist, testified that he had examined the injured eye in May, 1924, and, after testifying fully as to the condition of the eye, said:

"He had 99 per cent. disability of the left eye without glasses. With glasses, with myopic astigmatic lens, he was able to see twenty-fifty, which equals 91 per cent. vision, or 9 per cent. loss of ˎvision with a glass. Without glasses, there is 99 per cent. disability with the left eye,· practically nil. By that I mean that the eye is practically destroyed."

Dr. Richardson, also an eye specialist, and one of those who treated the injured eye, after testifying fully about the injury to the eye, testified that, when he discharged defendant in error from further treatment, "his vision was normal with glasses. There was no impairment whatever of the vision with glasses." He did not testify as to what percentage of the vision, if any, existed without glasses.

We will first inquire whether under the facts, in contemplation of law, the eye should be considered as lost. The statute (article 8306, § 12 [5246—21]) provides compensation "for the total and permanent loss of the sight of one eye, sixty per cent. of the average weekly wages during 100 weeks." It is undisputed that the injury resulted in a loss of 99 per cent. of the vision, but there remains some slight sense of vision, not sufficient for any practical purpose.

In International Travelers' Association v. Rogers (Tex. Civ. App.) 163 S. W. 421, in construing an accident insurance policy that provided, if an accident should result in the loss within 90 days after the accident of the "entire sight" of the eye, the insured should receive, etc., it was held that the word "entire" did not mean "total blindness," but that if the injured party had suffered the loss of all practical use of the eye, he had lost the entire sight of the eye. The Supreme Court refused a writ of error. In Collins v. Albrecht Co., 212 Mich. 147, 180 N. W. 480, the Supreme Court of Michigan held that, where one suffered a loss of 75 per cent. of the vision of an eye, he had "lost an eye" within the contemplation of the Workmen's Compensation Law of that state, providing compensation for the "loss of an eye." In Stammers v. Banner Coal Co., 214 Mich. 215, 183 N. W. 21, it was held that, where one had suffered an injury to the eye, whereby he lost 95 per cent. of the use of the eye, he had suffered the loss of the eye. In Employers' Mutual Insurance Co. v. Industrial Commission, 70 Colo. 228, 199 P. 482, the Supreme Court of Colorado held that one suffering 90 per cent. loss of the sight of an eye was entitled to compensation for total blindness; this because for all practical purposes he had lost the sight of his eye. In Titchener v. Industrial Board, 202 Ill. App. 296, it was held that, where ·an injury to the eye had been sustained that left the part with sufficient vision to only perceive light and objects moving, the use of the eye ˙being destroyed for all practical purposes, the party had suffered the loss of the eye. In Sneck v. Travelers' Insurance Co., 88 Hun, 94, 34 N. Y. S. 545, in construing an accident insurance policy providing against the loss by "severance of one entire hand or foot," the court held that, when the hand is injured so that the party had no use of it as a hand, he had lost his "entire hand" within the meaning of the policy. In Lord v. American Mutual Association, 89 Wis. 19, 61 N. W. 293, 26 L. R. A. 741, 46 Am. St. Rep. 815, the Supreme Court of Wisconsin, in construing the term "loss of hand," within the meaning of an accident policy, held that, where one's hand was injured. to the extent that it became useless as a hand, the injured party had suffered the "loss of a hand," although the injury did not require amputation of the hand above the wrist. In Modern Order of Prætorians v. Taylor, 60 Tex. Civ. App. 217ˎ 127 S. W. 260, in construing a beneficial cer· tificate entitling the member to one-fourth of

his benefit if he should "lose a foot," it was held that it did not mean that there must be a severance of the foot from the body, but meant the permanent loss of the use of the foot. In Burt v. Clay, 207 Ky. 278, 269 S. W. 322, it is held, in construing the Kentucky compensation statute, that a loss of 90 per cent. of the vision of an eye amounted to industrial blindness, and gave compensation for the total loss of the eye. Many other cases could be cited to show that as a general rule the loss of the use of a member is considered and held to be the loss of the member.

But, in the instant case, it is contended by plaintiff in error that it cannot be held that defendant in error has lost his eye within the meaning of the compensation statute, because while the sight of the eye is destroyed for all practical purposes, yet when aided by the use of glasses he has considerable vision; one of the eye specialists testifying that the vision was thus restored to 91 per cent. On the other hand, it is contended by defendant in error that, when the natural vision is destroyed, for all practical purposes, compensation will not be defeated because the vision may be aided by artificial means; that the law intends for compensation to be made for the normal loss, without reference to artificial aid. Therefore the decisive question in the case is, Where the use of an eye is, for all practical purposes, destroyed by an injury to same, in so far as the natural use of the eye is concerned, but by the use of properly adjusted glasses the vision can be largely restored, has the party, within the meaning and intent of the Workmen's Compensation Law, lost the use of the eye? In other words, where the eye, by reason of injury, is, for all practical purposes, useless without the aid of artificial means, is the injured party entitled to compensation? We have not been able to find any case in point in this state. Where the question has been considered the authorities are in conflict. In New York it has been held that though the natural use of the eye is practically destroyed by an accident, yet, if with the aid of glasses the sight is restored to nearly normal, there is no loss of the eye. Frings v. Pierce Arrow Co., 182 App. Div. 445, 169 N. Y. S. 309. This holding is followed in Valentine v. Sherwood Metal Co., 189 App. Div. 410, 178 N. Y. S. 494; McNamara v. McHarg, Barton Co., 200 App. Div. 188, 192 N. Y. S. 743; Bochecchio v. Charnin Co., 209 App. Div. 619, 205 N. Y. S. 350. In Utah a like holding has been made. Moray v. Industrial Commission, 58 Utah, 404, 199 P. 1023. So, also, in Michigan. Cline v. Studebaker Corporation, 189 Mich. 514, 155 N. W. 519, L. R. A. 1916C, 1139. The opposite doctrine, that, if by reason of an injury to the eye its use for all practical purposes has been destroyed, although it may be aided by the use of artificial means, it amounts to the loss of the eye, is held in New Jersey. Johannsen v. Union Iron Works, 97 N. J. Law, 569, 117 A. 639, where it was held that an employee, suffering an injury to the eye, rendering it substantially lost, is entitled to compensation, although the vision may be rendered normal by the use of glasses. And in Minnesota. Butch v. Shaver, 150 Minn. 94, 184 N. W. 572, where it was held that one, receiving an injury to the eye that rendered it practically useless, but if aided by properly fitted glasses would have two-thirds vision, had lost the use of the eye, and that the compensation provided by law for the loss of the use of a member would not be diminished or refused by reason of the fact that the disability might, in a measure, be overcome by artificial means. And in Pennsylvania Androlonis v. Philadelphia & Reading Coal & Iron Co., 280 Pa. 71, 124 A. 336, where it was held that the fact that the injured party was able to return to work in a coal mine by the use of glasses was no reason for his being refused compensation as for the loss of an eye, quoting from another case (Fillip v. Cramp, 80 Pa. Super. Ct. 68):

"If the sight is practically destroyed, and only a little vision left, the act should afford compensation for this the same as if the sight were gone entirely."

And in Illinois (Juergens Bros. Co. v. Industrial Commission, 290 Ill. 420, 125 N. E. 337), where the Supreme Court of Illinois discussed Frings v. Pierce Arrow Motor Co., supra, and refused to follow it.

[4] We think the last line of decisions above cited announce the correct rule, and are more in consonance with the humane and beneficent purposes of the law and more in accord with the reason of its enactment. Workmen's Compensation Acts are highly remedial statutes, and the almost universal rule is that they should be given a liberal interpretation and application in order to effectuate their purpose. Suppose one should get his leg severed just below the knee. Under the contention of plaintiff in error, as he could be fitted with a cork leg and foot and by means of the same could go about his business effectively, he would not be entitled to compensation for the actual loss suffered, for the reason that by artificial means the loss could be largely restored. While this illustration is not identical as to the facts, still the principle is the same. Such an interpretation of the law would result in injustice and deny its intended benefits to those intended to be benefited. It may properly be said that the act was intended to recompense the injured party for the handicap that he must labor under in the future, and also that this handicap included the uncertainty of the continued effectiveness of the artificial means, if any, used to remedy the loss, and the cost, worry, discomfort, and inconvenience of its use and the probability of its

utter failure at some time in the future. We do not believe that the Legislature intended that the benefits of the law should be made to depend upon, or be affected by, the perilous theories of artificial aid to supply the loss of nature's endowments.

[5] The assignments are overruled. We think the evidence amply supports the jury's findings.

Plaintiff in error presents other assignments of error, all of which have been considered, and none of them are believed to show reversible error and are overruled.

The judgment should be affirmed, and it is so ordered.

Affirmed.