EDWARDS *v.* UNITED STATES RUBBER COMPANY.

1. Workmen's Compensation—Loss of Eye—Cataract Lens—Co-ordinated Vision.
   Employee who lost 98 per cent. vision in left eye in which he had previously enjoyed normal vision, as result of injury received was entitled to compensation as for the specific loss of an eye, where even though supplied with a cataract lens giving him 75 per cent. vision in that eye, he still would not have co-ordinated vision and could not effectively use more than one eye at any one time (CL 1948, § 412.10).

2. Same—Loss of Eye—Question of Fact.
   Where issue is presented as to whether injury to employee resulted in loss of eye, the decision of the workmen's compensation commission is final (CL 1948, §§ 412.10, 413.12).

3. Same—Loss of Eye—80 per cent. Loss of Vision.
   An employee who suffers an injury resulting in 80 per cent. loss of vision in an eye may be allowed workmen's compensation for the specific loss of an eye (CL 1948, § 412.10).

4. Same—Loss of Eye.
   An employee would not be entitled to compensation twice for the specific loss of the same eye (CL 1948, § 412.10).

5. Same—Loss of Eye—Finding of Commission—Evidence.
   Evidence supported workmen's compensation commission's finding that plaintiff had lost the sight of an eye entitling him to an award as for the specific loss of an eye where, although he had lost 98 per cent. vision in such eye and a cataract lens would give him 75 per cent. vision in such eye, there was not available any means of providing him with co-ordinated vision (CL 1948, § 412.10).

---

References for Points in Headnotes
[1–5] 58 Am Jur, Workmen's Compensation, § 290.
[1–5] Workmen's compensation: Compensation for loss or impairment of eyesight within workmen's compensation acts. 8 ALR 1324; 24 ALR 1466; 73 ALR 706; 99 ALR 1498; 142 ALR 822.
[2] 58 Am Jur, Workmen's Compensation, §§ 530, 532.

Appeal from Workmen's Compensation Commission. Submitted June 14, 1949. (Docket No. 50, Calendar No. 44,383.) Decided June 29, 1949.

J. D. Edwards presented his claim for compensation against United States Rubber Company, employer, for loss of eye while in its employ. Award to plaintiff. Defendant appeals. Affirmed.

*Saul M. Leach* (*Edwards & Bohn,* of counsel), for plaintiff.

*Lacey, Scroggie, Lacey & Buchanan,* for defendant.

BOYLES, J. On April 1, 1948, while plaintiff was employed by the defendant cleaning automobile tires with a revolving wire brush, a steel wire flew from the brush and penetrated the cornea of plaintiff's left eye. He was hospitalized for several weeks, a traumatic cataract and scar tissue developed as a result of the injury, the cataract was surgically removed, and plaintiff's eye was bandaged for about 2 months. He was paid compensation for total disability from April 1st to June 20th, at which time he returned to work, almost blind in the left eye. He had lost 98 per cent. vision in that eye. Plaintiff filed application with the workmen's compensation commission for 150 weeks' compensation for specific loss of an eye, under CL 1948, § 412.10 (Stat Ann 1947 Cum Supp § 17.160). An award was allowed by the deputy, affirmed by the commission on review, and the defendant, on leave granted, appeals.

Undisputed testimony shows that the vision in the injured eye might be corrected by the use of a cataract lens to the extent that plaintiff by the use of such lens would have 75 per cent. vision in said eye,

but that it would not be co-ordinated with the right eye. Appellant claims that under such circumstances plaintiff is not entitled to an award of compensation for specific loss of an eye. That is the sole question raised by the appellant for reversal.

Prior to the 1943 amendment,* the question of whether or not an employee was entitled to compensation for the loss of an eye was determined by the test as to whether there was any useful industrial vision remaining after the injury. *Henderson* v. *Consumers Power Co.*, 301 Mich 564. In 1943, however, the statute was amended, and now contains the following provision:

"For the purpose of this act 80 per cent. loss of vision of 1 eye shall constitute the total loss of that eye." CL 1948, § 412.10 (Stat Ann 1947 Cum Supp § 17.160).

Appellant relies on *Marrs* v. *Ford Motor Co.*, 315 Mich 211, and *Dyer* v. *Abrasive Dressing & Tool Co.*, 315 Mich 215. In those cases we pointed out that the legislature, by adding the above definition to the statute, has given the Court a rule to follow in determining whether there has been the loss of an eye. In the *Dyer Case,* this Court stated, p 217:

"The statute quoted above provides a definite standard or basis to be used in determining whether or not there is total loss of an eye. We construe the statute to mean (1) that if an employee has more than 20 per cent. of vision in an eye before an injury, but less than 20 per cent. remaining after the injury, he has sustained an '80 per cent. loss of vision' or a total loss of the eye; and (2) that if an employee has more than 20 per cent. of vision remaining in an eye after an injury, he has not sustained '80 per cent. loss of vision' or total loss of the eye."

---

* See PA 1912 (1st Ex Sess), No 10, pt 2, § 10 (CL 1929, § 8426 [Stat Ann § 17.160]).

Thus it is clear that if the plaintiff in this case has more than 20 per cent. vision in his left eye after the injury, he has not lost an eye within the meaning of the act. Appellant argues that whether the employee has *industrial or useful* vision after an injury is to be measured by the remaining *corrected* vision by the use of a lens, and in support thereof relies on *Cline* v. *Studebaker Corporation* (1915), 189 Mich 514 (LRA1916C, 1139). In that case we held (syllabus):

"However, for the partial loss of the sight of claimant's eye, which could be minimized by the use of glasses, so that no diminution of earnings took place, and no impairment of his earning capacity appeared from the testimony, the board * was not authorized to award compensation (PA 1912 [1st Ex Sess], No 10, pt 2, § 10) though without glasses he had only 10 per cent. of normal vision but 50 per cent. with them."

In the *Cline Case,* the employee was awarded compensation for the loss of an eye injured March 2, 1913, at which time PA 1912 (1st Ex Sess), No 10, pt 2, § 10, *supra,* provided compensation "for the loss of an eye, 50 per centum of average weekly wages during 100 weeks." Passing the question whether the *Cline Case,* decided before the 1943 amendment, now has any force, in that case the proofs showed that without glasses the employee had only 10 per cent. vision in the injured eye, but that with glasses he had 50 per cent. vision therein. To that extent the *Cline Case* is a parallel to the case at bar except as to the percentages of vision remaining in the injured eye with and without corrective aid. The important distinction between the *Cline*

---

* The powers and duties of the industrial accident board, here referred to, are now vested in the workmen's compensation commission. See CL 1948, §§ 408.1, 408.6 (Stat Ann 1947 Cum Supp §§ 17.6[1], 17.6[6].—REPORTER.

*Case* and the case at bar lies in the fact, in so far as it appears from the opinion in that case, that Cline had co-ordinated vision between the injured eye and his remaining good eye after the injury had been corrected by the use of glasses; which the plaintiff in the instant case would not have. In the *Cline Case,* the plaintiff had at one and the same time the co-ordinated use of the vision of two eyes, with more than 20 per cent. vision in each, including the injured eye. In the case at bar, the situation is otherwise. Plaintiff, by the use of a cataract lens for the injured eye, would not have co-ordinated vision, and still could not effectively use more than one eye at any one time. Under such circumstances, he has suffered the loss of the injured eye, under the 1943 amendment.

"An employee, who, in the course of his employment, received an accidental injury to his right eye, which left him with but one-sixtieth of his normal vision therein, was properly awarded compensation, under the workmen's compensation act, as for the loss of an eye, although it was shown that, with the use of a strong glass, the vision of said eye was above normal, where it was also shown that, when the glass was so used, said eye would not co-ordinate with the left eye." *Suggs* v. *Ternstedt Manfg. Co.* (syllabus), 232 Mich 599.

"Where injury to employee's eye rendered it useless for industrial purposes, there being no co-ordination between the eyes either with or without glasses, department of labor and industry was justified in awarding compensation for loss of eye, under workmen's compensation act.

"Where issue of fact is presented as to whether injury to employee resulted in loss of eye, decision of department is final." * *Lindhout* v. *Brochu & Hass* (syllabi), 255 Mich 234.

---

* See CL 1948, § 413.12 (Stat Ann 1947 Cum Supp § 17.186).— Reporter.

In the instant case, the only way that the plaintiff could use his left eye, even with the addition of a cataract lens, would be at such time as he did not use his right eye, due to lack of co-ordination. The doctor testified:

"*Q.* Then in his present condition, Doctor, how will he be able to get, medically, Doctor, the use of his left eye?
"*A.* With one good eye, his right eye good, he can't actually use that eye at the present time.   *   *   *
"*The Commissioner:* That is, he cannot use the left eye?
"*A.* Yes.   *   *   *
"*Q.* (By *Mr. Leach* [attorney for plaintiff]): What stage of the game, then, will come about that will permit him to use the vision of the left eye, as you say?
"*A.* Well, in the future, something may be developed which may be useful in that case, yes, but at the present time we don't have anything. The only way he can use his left eye would be to lose his right eye, his good eye.   *   *   *
"*Q.* It follows, therefore, that the only time he will be able to attain vision of the left eye is when he loses his right eye; is that correct?
"*A.* Yes, sir."

In its brief the defendant concedes:

"Admittedly, plaintiff has less than 20 per cent. uncorrected vision in his injured eye.   *   *   *
"It is admitted by defendant that plaintiff is unable to use this corrected vision at the present time, because, with correction, the left eye will not co-ordinate with the uninjured right eye."

The commission found—and it is not disputed— that before the injury plaintiff had more than 20 per cent. vision in the left eye. This brings him within the *Dyer Case, supra,* where we said, p 217:

"Plaintiff contends that the only question of fact before the department was whether or not he had 'any useful vision remaining before the injury' on October 9, 1943. We cannot agree with this contention, because, under the statute as above interpreted, the question before the department was, what per cent. of vision did plaintiff have in his left eye before the injury? It is clear that if he had less than 20 per cent. of vision before the injury, he did not have an eye to lose within the meaning of the statute."

Hence, the appellant argues that the identical question now before us, although in reverse, was presented in the *Marrs Case, supra.* In that case, Marrs had suffered an injury to his right eye, a cataract developed which had been removed, and Marrs had at least 20 per cent. vision in the injured eye by using glasses. However, with the use of the corrective lens, the plaintiff did not have co-ordinated vision. As in the case at bar, he had only the use of one eye at any one time. All of this had occurred prior to the effective date of the 1943 amendment. Subsequently he suffered an accident to the injured eye, after the effective date of the 1943 amendment, causing a total loss of vision in said eye. The commission held that the plaintiff "did not have an eye to lose" at the time of the accident, and denied him compensation for the loss of an eye. This Court set aside the denial of the award, and allowed compensation; *i.e.,* in effect holding that he *then did have* "an eye to lose." It was apparent that after the injury, which occurred after the 1943 amendment, the plaintiff did not have 20 per cent. of vision left in the injured eye, either with or without corrective lens. We held that total loss of vision of this one eye, at that time, entitled him to compensation. Appellant points out that as a result of our holding in that case the plaintiff, who had more than 20 per

cent. *corrected* vision in the injured eye, but without co-ordination, still had an eye to lose; and from such result in that case appellant now argues that in the case at bar, where the plaintiff still *would have* 20/40 corrected vision by the use of a cataract lens, even though without co-ordination, he still *now* has "an eye to lose" within the meaning of our decisions, wherefore it cannot *now* be said that plaintiff has lost an eye by the accident herein referred to.

The crux of appellant's reasoning is as follows: If plaintiff should later lose completely and permanently the sight in his *right* eye, he would still have an "eye to lose" inasmuch as he would still have his left eye with 75 per cent. vision, by use of a cataract lens, with no necessity then for co-ordination. From that premise, appellant argues that plaintiff might ultimately obtain compensation for the loss of three eyes, if at some later time he again lost 80 per cent. use of his left eye.

It must be admitted that there is a measure of logic in such argument, assuming that the 1943 amendment be construed in consonance with appellant's theory. However, there is no merit in the result which would follow. In the *Marrs Case,* compensation was awarded for the specific loss of an eye. Such compensation had not been previously awarded to that employee for the loss of that eye. In the case at bar, the employee has not yet had compensation for the specific loss of his left eye. In the final analysis, an employee who has suffered 80 per cent. loss of vision of one eye, since the 1943 amendment, has suffered the total loss of that eye and is entitled to compensation. It is the injury to an eye, resulting in 80 per cent. loss of vision in the eye itself, for which the statute now allows compensation for the specific loss of an eye. It is hardly conceivable that an employee who had been awarded compensation for the specific loss of an eye, before

corrective lens had been put to use to result in more than 20 per cent. vision in the injured eye, would again be awarded compensation for loss of the same eye, which might result from an injury to the same eye after the correction. Certainly an employee would not be entitled to compensation twice, for the specific loss of the same eye. Notwithstanding anything said in our previous opinions, nothing in the present act would justify a conclusion that an accident to or the loss of a *cataract lens* would be considered as the loss of an eye. Nor should an employee who sustains an injury to an eye resulting in 80 per cent. loss of vision therein be denied compensation for the specific loss of an eye until such later time as corrective vision, which might be obtained by use of a cataract lens, be lost either by inability to obtain a cataract lens, or an injury to or the loss of such *cataract lens*. Nothing in previous decisions of the Court should be construed to deny compensation for the first time, since the 1943 amendment, where "80 per cent. loss of vision of 1 eye" is shown. The 1943 amendment declares that it "shall constitute the total loss of that eye."

The commission has found that plaintiff has suffered the loss of an eye, within the meaning of the 1943 amendment, by an injury arising out of and in the course of his employment by the defendant. There is competent testimony to support the award.

The award is affirmed, with costs to appellee, and the case remanded.

SHARPE, C. J., and BUSHNELL, REID, NORTH, BUTZEL, and CARR, JJ., concurred with BOYLES, J.

DETHMERS, J., concurred in the result.