LINDSAY *v.* GLENNIE INDUSTRIES, INC.

1. WORKMEN'S COMPENSATION—LOSS OF EYE.

Surgical removal of the natural lens of an eye occasioned by an injury arising out of and in the course of employment *held,* loss of an eye within the meaning of the statute (CLS 1961, § 412.10).

2. SAME—LOSS OF EYE—EARNING CAPACITY.

An award for a specific loss under the workmen's compensation act "for the loss of an eye" is made irrespective of the diminution of use of the eye or loss of earnings or earning capacity, as the statute is construed in accordance with the plain meaning of its wording (CLS 1961, § 412.10).

3. SAME—LOSS OF EYE—OPHTHALMOLOGICAL ADVANCES—CONTACT LENS.

The Supreme Court does not change the plain meaning of the workmen's compensation act providing a specific award "for the loss of an eye" by recognizing ophthalmological advances and refinements in the use of contact lens in the absence of language in the specific loss provision of the act requiring such recognition (CLS 1961, § 412.10).

Appeal by leave granted from Court of Appeals Division 1; Lesinski, C. J., J. H. Gillis and T. G. Kavanagh, JJ., order denying leave to appeal from Workmen's Compensation Appeal Board.   Sub-

REFERENCES FOR POINTS IN HEADNOTES

[1]  58 Am Jur, Workmen's Compensation § 290.
[2]  58 Am Jur, Workmen's Compensation §§ 287, 290, 293.
    Workmen's compensation: compensation for loss or impairment of eyesight.   8 ALR 1324, 24 ALR 1466, 73 ALR 706, 99 ALR 1498, 142 ALR 822.
[3]  58 Am Jur, Workmen's Compensation § 26 *et seq.*

mitted October 3, 1967. (Calendar No. 16, Docket No. 51,593.) Decided November 6, 1967. Rehearing denied December 4, 1967.

Bernard Lindsay presented his claim for workmen's compensation against Glennie Industries, Inc., and Employers Mutual of Wausau. Compensation denied. Affirmed by Workmen's Compensation Appeal Board. Plaintiff appeals. Reversed and remanded.

*Kelman, Loria, Downing & Schneider (Jerome W. Kelman,* of counsel), for plaintiff.

*Philip A. Gillis* and *George E. Ganos,* for defendants.

O'HARA, J. This is an appeal on leave granted from an order of the Court of Appeals denying leave to appeal from a decision of the workmen's compensation appeal board. The board's decision affirmed a referee's holding that plaintiff-appellant did not incur the specific loss of an eye within the meaning of part 2, § 10, as last amended by PA 1956, No 195 (CLS 1961, § 412.10 [Stat Ann 1963 Cum Supp § 17.160]), which provided:

"For the loss of an eye, 66-2/3% of average weekly wages during 162 weeks; for the purpose of this act 80% loss of vision of 1 eye shall constitute the total loss of that eye."

The facts are stipulated. Plaintiff suffered a personal injury, November 30, 1962, which arose out of and in the course of his employment. As a result of the injury plaintiff developed a cataract. The removal thereof compelled the removal also of the natural lens of his eye. In consequence he had no vision in the lensless eye. He was fitted with a contact lens which enables him to enjoy virtual full vision in the eye when wearing the contact lens.

By reason of what is denominated in the record as "technical problems" this case reached us before the case of *Serafin* v. *Muskegon Motor Specialities* and the *American Surety Company,* 1966, Michigan Workmen's Compensation Appeal Board Opinions, p 423. That case involved the identical question presented here. We note this because in the *Serafin* case 5 separate opinions by appeal board members were handed down. In this case a single brief opinion was filed. The rationale of the board members had been fully developed in *Serafin.* We shall have occasion to refer to the opinions in *Serafin* to decide the issue here. Except for the names of the parties, no difference between the cases exists.

Four members of the appeal board held in *Serafin* that the issue here is controlled by *Cline* v. *Studebaker Corporation* (1915), 189 Mich 514. The majority held that in an application for specific loss of an eye, the proper test is to measure the degree of vision and coordination after the application of the prosthesis.

The minority view relied also on a decision of this Court in *Edwards* v. *United States Rubber Co.* (1949), 325 Mich 203, construed as having held that the proper test is in the degree of vision remaining *before* the application of prosthesis to the injured eye.

The difficulty in attempting to apply former holdings of this Court to the case at bar is that no judicial test has ever been applied to the stipulated fact situation here presented. In *Edwards, supra,* as in all of the previous cases our research has covered, there have been distinguishing facts giving rise to differing questions of law. Some turned on the question of how much vision the workmen had in the injured eye before the industrial injury. Some were controlled by the fact that while more than the

statutory percentage of vision remained in the injured eye, *the vision was useless industrially* because the remaining vision could not be *coordinated* with that of the uninjured eye.

*Cline* v. *Studebaker* is said by appellee to control. We do not so read it. *Cline* was decided before the 1943 amendment to the specific loss schedule of the act. The case rests on its predecessor, *Hirschkorn* v. *Fiege Desk Co.* (1915), 184 Mich 239. The point in *Hirschkorn* was that the industrial accident board (now appeal board) attempted to apply an equitable solution to a manifestly inequitable statute. The specific loss schedule of the act provided only for the "loss of an eye." The board found (p 241):

" 'That, the usefulness of the left eye of applicant having been destroyed by said injury to the extent of more than one-third, and somewhat less than one-half, the applicant was entitled to an award of 35-weeks' compensation, * * * that being the fair and reasonable percentage of the 100-weeks compensation, which the law provides for the full loss of the eye.' "

The Court observed (p 242):

"The award made by the board was a very equitable one, and is one which we would prefer to sustain, if we could do so without attempting to amend the law by judicial construction."

*Hirschkorn* was decided in January, 1915. In the next term, in April, the Court passed upon the application of a similarly injured workman, Cline, whose claim was against Studebaker Corporation, 189 Mich 514. The Court, referring to *Hirschkorn,* held (p 519):

"The statute does not award compensation for the partial loss of an eye, except as measured by lessened earnings. Although there is no special finding

upon the point, it is evident from the amount allowed that the industrial accident board treated the injury as 'the loss of an eye,' rather than as a partial loss, and that it made its allowance under the schedule of fixed liabilities."

The only difference between the 2 cases was that plaintiff Cline lost 90% of the vision in the injured eye as against the 35 to 50% in the case of *Hirschkorn.* The controlling statute, harsh as it was, had not been amended and Cline could not establish the loss of his eye.

It was in this setting that the industrial accident board used the language that has confused the issue here. Strictly speaking it was dicta, for the Court wrote (189 Mich 514, 519):

"Under these circumstances it seems impossible to say that the injury has resulted in the loss of the eye. The use of glasses is a very ordinary occurrence, both by the young and the old. It is unnecessary to determine whether the loss of 90% of the sight is substantially the loss of the eye, because that is not the present case. Ninety percent of the sight is not lost when it can be diminished to 50% by use of common appliances. And it is the duty of the sufferer to minimize the injury as much as he reasonably may. We cannot help but feel it unfortunate, however, that further tests of the eye were not made so as to exclude all possible chance of mistake in so important a matter.

"The case of *Hirschkorn* v. *Fiege Desk Co., supra,* must be held as controlling in this one. The statute seems not to have provided compensation for the partial loss of an eye under the circumstances existing here. That case, however, had not been determined when this matter was before the industrial accident board.

"The award must be reversed and set aside."

Thus it may be seen that the essential point of decision was the lack of proof of loss of an eye under the statute as it was then worded. We reject *Cline* as controlling for two reasons: First, the statute has since been amended. Second, it is undisputed here that after the required surgery removing the natural lens, claimant here had a sightless eye, as did claimant Serafin.

We treat this case as one of first impression. We hold the surgical removal of the natural lens made necessary by an injury arising out of and in the course of claimant's employment is loss of an eye within the meaning of the amended statute.

We recognize that substituting an artificial lens has "restored" vision to the otherwise sightless eye. We point out that a specific loss award is not made as compensation for diminution of use of the involved organ or member. It is not awarded to compensate for loss of earnings or earning capacity. It is awarded irrespective of either fact or both. If ophthalmological advances and refinements in the use of contact lens has in fact rendered the amended statute inconsonant with its original legislative intent, it is the province of the legislature to say so. We construe the statute in the plain meaning of its wording.

The order of the appeal board is vacated. The case is remanded to the board with directions to enter an award for the specific loss provided by statute. Plaintiff may tax costs.

DETHMERS, C. J., and KELLY, BLACK, T. M. KAVANAGH, SOURIS, ADAMS, and BRENNAN, JJ., concurred.