REA *v.* GENERAL ELECTRIC CO.

OPINION OF THE COURT

1. WORKMEN'S COMPENSATION—INDUSTRIAL USE OF DIGIT—QUESTION
OF FACT.

Whether a workmen's compensation claimant had suffered the
loss of the industrial use of a digit is a question of fact
(MCLA § 412.10[a]).

2. WORKMEN'S COMPENSATION — SPECIFIC LOSS BENEFIT — BASIS —
LOSS OF EARNINGS.

A workmen's compensation claimant who has suffered the loss
of a statutorily-designated organ or anatomical member is
entitled to a specific loss benefit regardless of any wages the
claimant receives, whether greater or less than those he re-
ceived at the time of his injury (MCLA § 412.10).

3. WORKMEN'S COMPENSATION — SPECIFIC LOSS BENEFIT — BASIS —
LOSS OF EARNINGS.

A specific loss benefit under the Workmen's Compensation Act
schedule of losses for certain designated organs or anatomical
members is not made as compensation for diminution of use
of the organ or member or as compensation for loss of earnings
or earning capacity, but is awarded irrespective of either fact
or both (MCLA § 412.10).

4. WORKMEN'S COMPENSATION—SPECIFIC LOSS BENEFIT—LOSS OF
DIGIT—LOSS OF INDUSTRIAL USE.

Workmen's compensation claimant, whose left index finger was
lacerated and the tendons severed in an industrial accident,
was properly awarded a specific loss award where expert tes-
timony showed that claimant had lost any useful function of the
finger and that amputation was advisable, because claimant's in-

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Workmen's Compensation § 461.
[2–6] 58 Am Jur, Workmen's Compensation § 287 *et seq.*

jury could have been found to be the equivalent of amputation of the digit (MCLA § 412.10).

5. WORKMEN'S COMPENSATION—SPECIFIC LOSS BENEFIT—NONAMPU-
TATED MEMBER—LOSS OF INDUSTRIAL USE.

  ·  A specific schedule loss of an anatomical member exists under the Workmen's Compensation Act even though no actual physical loss occurred where the member is totally incapacitated, rendering it industrially useless for any type of work; the test to be used to determine compensability is whether the loss of use or function equals actual physical loss as by destruction or amputation (MCLA § 412.10).

DISSENT BY GILLIS, J.

6. WORKMEN'S COMPENSATION—SPECIFIC LOSS BENEFIT—NONAMPU-
TATED MEMBER—LOSS OF INDUSTRIAL USE.

    *Workmen's compensation claimant was not entitled to a specific loss award for the loss of his left index finger, which had not been amputated, where claimant himself testified that he used his left hand and his left index finger in doing his work.*

Appeal from Workmen's Compensation Appeal Board. Submitted Division 3 June 8, 1971, at Grand Rapids. (Docket No. 10753.) Decided August 24, 1971.

Albert Rea presented his claim for workmen's compensation against General Electric Co. and Electric Mutual Liability Insurance Company. Compensation awarded. Defendants appeal. Affirmed.

*Marcus, McCroskey, Libner, Reamon & Williams* (by *Lawrence C. Klukowski*), for plaintiff.

*Cholette, Perkins & Buchanan* (by *Sherman H. Cone*), for defendants.

Before: R. B. BURNS, P. J., and FITZGERALD and J. H. GILLIS, JJ.

FITZGERALD, J.   On September 17, 1965, Albert Rea, plaintiff, suffered an industrial accident while employed by the General Electric Company. Plaintiff was a group leader supervising the production of magnets when a larger magnet slipped in his hand and hit a grinding wheel. The magnet lacerated plaintiff's left index finger and severed the tendons.

The sole question is whether plaintiff lost the industrial use of his left index finger under the provisions of MCLA § 412.10(a) (Stat Ann 1968 Rev § 17.160[a]) as a result of the accident.

The matter was initially heard by a referee in January 1967. During the course of the hearing, plaintiff demonstrated the extent to which he could move and use the left index finger. Plaintiff was able to pick up a pencil by placing the side of the finger against the side of the thumb. He picked up a roll of the reporter's notepaper, though he claimed he did not use his finger to accomplish this task. He further demonstrated that he was unable to lift a piece of luggage, estimated to weigh 15 pounds, using only his index finger and thumb. When plaintiff was asked if he had any feeling in his index finger, he replied, "Just a little tiny bit. The finger gets awful cold and aches." The plaintiff also testified that he had difficulty doing his regular work and that he could not set up machines or trip them like he used to do.

After hearing the case, the referee determined that "while plaintiff has some residuals from the injury, he does not have an industrial loss of use of the left index finger".

On appeal, the appeal board reversed the referee's determination in a four-to-three decision. The Workmen's Compensation Appeal Board is the trier of fact in compensation cases and makes its own determinations as to credibility of witnesses and

weight to be given their testimony. *White* v. *Revere Copper & Brass, Inc.* (1970), 383 Mich 457.

The finding of fact by the Workmen's Compensation Appeal Board will not be reversed by courts on appeal if findings of fact are supported by the record, in the absence of fraud. *Hutsko* v. *Chrysler Corporation* (1968), 381 Mich 99.

In Michigan, the question of industrial loss of use is a question of fact. In *Mitchell* v. *Metal Assemblies, Inc.,* (1967), 379 Mich 368, the applicable rule is stated at p 375:

> "[I]t is rather firmly settled that, in this particular type of closely disputed 'loss of industrial use' case, the issue almost automatically becomes one of fact."

Also, see, *Lentz* v. *Mumy Well Service* (1954), 340 Mich 1, and *Shumate* v. *American Stamping Company* (1959), 357 Mich 689. These cases reflect that the question of loss of industrial use of a digit is likewise a question of fact. This Court must decide then whether there was an adequate basis for this determination by the board.

There are two legal bases for recovery in workmen's compensation cases such as this. The first is a differential payment settlement computed according to the difference in wages the injured workman is able to earn after his injury as opposed to the wage he had earned previous to the injury.

The second basis, the basis we are concerned with here, since plaintiff has returned to his original job, is a specific loss benefit paid under a schedule of losses applicable to certain designated organs or anatomical members. The injured party is entitled to this benefit regardless of any wages he receives. Logically, if the legislative intent had been to only compensate those who lost their positions due to injuries, the second basis, the specific loss benefit,

would never have been implemented. It is therefore collectable regardless of the wages plaintiff receives, whether greater or less than those he received at the time of his injury. This is substantiated by a recent Michigan Supreme Court ruling which held:

"We point out that a specific loss award is not made as compensation for diminution of use of the involved organ or member. It is not awarded to compensate for loss of earnings or earning capacity It is awarded irrespective of either fact or both." *Lindsay* v. *Glennie Industries, Inc.,* (1967), 379 Mich 573, p 578.

The appeal board could therefore grant relief if appellee did, in fact, lose industrial use of the index digit regardless of loss of earnings.

The appeal board's decision was based upon two considerations. The first was the applicable language in the statute, and second, *Hutsko* v. *Chrysler Corporation, supra,* which is cited by both the majority and dissent.

The Workmen's Compensation Act, MCLA § 412-.10(a)(7) (Stat Ann 1968 Rev § 17.160[a][7]), states:

"The loss of more than one phalange shall be considered as the loss of the entire finger or thumb."

In determining whether the plaintiff did in fact lose the industrial use of his index finger, it is necessary to determine the degree of injury. A deposition by Dr. Swanson indicated the severity of the plaintiff's injury: "He has a combined loss of the digit of 83% which is the equivalent of 17% loss of function of the hand."

When asked what function plaintiff still had in the index finger, Dr. Swanson replied: " He has essentially no function, no useful function. He carries the finger in extension, and he has no tendons

to flex the interphalangeal joints and he has approximately sixty degrees which is about two-thirds motion of the MP joint which is the knuckle joint and this is due to the intrinsic muscles."

In applying the statute we hold that there was sufficient evidence to warrant a finding that the plaintiff did lose the industrial use of more than one phalange which, according to the statute, constitutes loss of the index finger.

The four majority members of the appeal board relied on *Hutsko* v. *Chrysler Corporation, supra.* *Hutsko* involved the claim for a specific loss of the industrial use of a hand where the little finger on the hand was injured in an industrial accident and had to be amputated. It held that where there is a specific scheduled loss, but no actual physical loss of the member, the test shall be (pp 102–104):

"There must be that total incapacitating loss of use which renders the organ or member industrially useless for any type of work. * * * The test is the degree of loss as compared with the actual physical loss by destruction or amputation. * * * In simple substance then we construe a specific schedule loss to be that loss of industrial use or function equal to actual physical loss as by destruction or amputation."

Three of the majority appeal board members felt that the loss suffered by plaintiff in the instant case was the equivalent of amputation. They wrote:

"If the only amount of industrial use which the plaintiff can obtain from his stiff left index finger is restricted entirely to some lateral (side) pinch between the thumb and side of the stiff index finger, then the plaintiff would have better functional use of the left hand by the physical amputation of the finger inasmuch as he could then more easily accomplish a task through 'substitution' by opposing the

tip of the middle finger with his thumb without having the stiff index finger in the way. However, plaintiff for good reason has exercised his option and ruled out surgery because of possible physical complications and such decision shall not preclude recovery."

There is ample testimony in the record to support such a determination. When Dr. Swanson was asked if he recommended amputation of the finger, he replied, "I think that is a reasonable thing to do, either that or try to reconstruct. There would be two things that you could do. One would be to try to reconstruct the tendons and you would only have a fair chance of recovery. The other thing to do would be just get rid of the digit."

*Hutsko* determines that the test of industrial loss is the degree of loss as compared with the actual loss by destruction or amputation. The test of the specific industrial loss of the index digit according to the statute is the loss of more than one phalange. The Workmen's Compensation Appeal Board determined that both of these tests were met. The record clearly reflects sufficient evidence to substantiate this determination of fact.

Affirmed. Costs to appellee.

R. B. BURNS, P. J., concurred.

J. H. GILLIS, J. (*dissenting*). I dissent. At the hearing before the referee, plaintiff testified as follows:

"*Q.* Do you use your left hand in doing your work?
"*A.* Yes, I do.
"*Q.* Do you use your index finger of your left hand?
"*A.* Well, yes."

In *Hutsko* v. *Chrysler Corporation* (1968), 381 Mich 99, 102 it was held that:

"in order to qualify for the specific loss payment where there has not been the actual physical loss of the member as by amputation, there must be that total incapacitating loss of use which renders the organ or member industrially useless for any type of work, skilled or unskilled."

In my opinion, plaintiff's own testimony belies total industrial loss of the finger and disqualifies him for compensation under specific loss provisions of the statute. I would reverse the Workmen's Compensation Appeal Board's ruling because of their misapplication of law and reinstate the hearing referee's decision.