604 N.W.2d 65 (1999)
Kenneth A. DILTS, Plaintiff-Appellee,
v.
BIG JIM'S SPORTS UNLIMITED and John Deere Insurance Company, Defendants-Appellants.
No. 112958, COA No. 210580.
Supreme Court of Michigan.
September 24, 1999.
On order of the Court, the application for leave to appeal from the August 7, 1998 decision of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.
CORRIGAN, J., dissents and states as follows:
I would peremptorily reverse the Court of Appeals and reinstate the WCAC's order reversing the magistrate's award of benefits.
Following an eye injury at work, plaintiff lost the natural lens in his left eye, which was replaced with a plastic prosthesis. He subsequently complained of blurred vision, and his treating physicians calculated his vision as 20/200 or 20/400 with or without correction. Defendant's medical expert, however, performed a test in which he deceived plaintiff regarding which eye was being tested. This test revealed that plaintiff had 20/40 uncorrected vision in his left eye.
The magistrate rested the award of benefits on two independent grounds. First, plaintiff had suffered an eighty percent vision loss according to his complaints. See M.C.L. § 418.361(2)(l); MSA 17.237(361)(2)(l). Second, the loss of the natural lens constituted the loss of an eye under Lindsay v. Glennie Industries, 379 Mich. 573, 578, 153 N.W.2d 642 (1967). The WCAC reversed in a two-to-one decision, holding that the magistrate's award was not supported by competent, material, and substantial evidence on the whole record. In a peremptory order, the Court of Appeals reinstated the magistrate's decision because plaintiff had suffered the loss of an eye under Lindsay.
Plaintiff was not entitled to benefits under the grounds articulated by the magistrate and the Court of Appeals. First, competent, material, and substantial evidence did not support the finding of an eighty percent vision loss. The treating physicians did not perform any objective tests to confirm plaintiff's subjective complaints. By contrast, the defense expert performed an objective test which revealed that plaintiff had not suffered an eighty percent vision loss in his left eye. Accordingly, I would reinstate the WCAC's decision on this ground.
Second, I would repudiate the Lindsay decision equating the loss of a natural lens with the loss of an eye. Section 361 does not define the term "eye." It provides compensation for the loss of an eye, not a lens, which is merely a part of the eye. If the Legislature had chosen to provide coverage for the loss of any part of the eye, it would have so provided. In an analogous situation, the Legislature specifically provided for benefits for the loss of a thumb, finger, or toe and for the loss of the first phalange of a thumb, finger, or toe. The Legislature could have followed a similar approach with the eye by providing that benefits are available for the loss of an eye and for any part of an eye, such as the natural lens. The Legislature did not do so. The structure of the statutory scheme thus suggests a legislative intent not to provide benefits for the mere loss of a natural lens (unless, of course, the claimant has experienced an eighty percent vision loss).
The Lindsay Court equated the loss of a natural lens with the loss of an eye without a principled justification. I would construe the statute as written and overrule Lindsay.