The question here involved is whether, in an accidental injury, the plaintiff has lost an eye within the meaning of the workmen's compensation law (2 Comp. Laws 1929, § 8407 et seq.). At the time of the accident, he was working as a machinist. A piece of metal struck his left eye, lodged there, and caused an injury from which *Page 641 
a traumatic cataract developed. In the university hospital at Ann Arbor, the metal and the cataract were removed at the same operation. Another cataract developed, and a second operation was necessary. An agreement to pay compensation at $18 a week was entered into by the parties and approved by the commission. This was paid during actual disability, a period of 16 weeks. The plaintiff returned to work, performed the same labor at which he was engaged when injured, and received the same wages. The defendant filed a petition to stop compensation. The plaintiff countered with a petition claiming compensation for the loss of an eye. The deputy commissioner granted the compensation asked for by the plaintiff. On appeal to the board, his award was vacated, and an order entered stopping compensation. The action of the board is here reviewed on certiorari.
It is conceded that in the surgical operations necessarily performed on the injured eye the lens was entirely destroyed, resulting in the loss of direct vision to the extent of from 90 to 98 per cent., and that because of the loss of the lens, the injured eye cannot co-ordinate with the direct vision of the good eye. If the plaintiff had no other useful vision, these facts would constitute the loss of an eye within the meaning of the compensation act. Stammers v. Banner Coal Co., 214 Mich. 215; Suggs v. Ternstedt Manfg. Co., 232 Mich. 599. But the defendant contends that, notwithstanding the loss of direct vision and the failure of the two eyes to co-ordinate, the plaintiff still has a considerable useful vision in the injured eye because of what is known, as peripheral or protective vision, and, because he admittedly has this vision, he has not lost an eye within the meaning of the statute. *Page 642 
It is undisputed that the plaintiff has no useful direct or central vision from the injured eye. He has peripheral or protective vision. The function of the eye in that respect has not been disturbed. Peripheral or protective vision is a side vision. It enables one to see moving shadows and objects appearing from the side of the eye. In his testimony, Dr. Slocum illustrated it as follows:
"If you look at your finger here, if I look at my finger here steadily, I see you men over here at the side, but you are all out of focus, yet if you were receding or coming towards me, I would know it. That would protect me from injury if my vision was reduced to that amount, so the protective vision is vision for objects without regard to their form or shape, that you can tell something about by the rapid increase or diminution of size, whether they are approaching or going away from you. A very valuable thing to possess with a poor eye, when you are crossing streets, and you are liable to be run into by an automobile, to see an approaching automobile from the side of the injured eye."
Dr. Owen testified:
"Q. When you speak of useful vision you refer only to protective vision, that is, noting objects from the side?
"A. Yes.
"Q. If a man is working at a machine, he can't see to put certain parts into the machine with that eye?
"A. No. * * *
"Q. And it would practically amount to this that he would have to use his good eye?
"A. Yes.
"Q. And do without the injured eye or he would have to use the injured eye corrected and do without the good eye? *Page 643 
"A. Yes. * * *
"Q. At all times when Mr. Powers is using his right eye he has also protective vision in the left eye when uncorrected?
"A. Yes, just the same at work as he would be on the street. He has ability to determine shadows and objects."
Dr. Wetzel testified:
"All he has in the left eye is capacity to see moving shadows."
None of the specialists who testified claims that, independently of the good eye, the plaintiff has any greater vision than to discern moving shadows and objects to the side of the injured eye. There is no doubt that, without the aid of the good eye, it would be impossible for the plaintiff to do the work at which he was engaged when injured. Has he lost an eye within the meaning of the compensation act? Of course he has some useful vision left in the injured eye, but the test is whether such vision is adequate for industrial pursuits.Liimatta v. Calumet Hecla Mining Co., 229 Mich. 41. Applying this test to the undisputed facts, we find that while the plaintiff has useful vision for some purposes it is not sufficient for use in industrial pursuits, and therefore it must be held that he has lost an eye within the meaning of the statute. In Collins v. Albrecht Co., 212 Mich. 147, the plaintiff was a carpenter. He was injured in the right eye by a nail. He was left with 25 per cent. vision. He could go about the city streets, read signs, and locate offices in office buildings, but was not able to work on a ladder or scaffold. As a carpenter, he was not able to do his work. The court held that he had lost an eye within the meaning of the compensation law. In that case, the plaintiff had much more useful vision than the *Page 644 
plaintiff has here. In holding that he has lost an eye within the meaning of the act, we do not disturb the finding of the board on the facts. We agree that he has some useful vision, but it is so slight that, for industrial purposes, it is practically useless. Any kind of vision is of some use, but peripheral vision as defined by the doctors is not a useful industrial vision.
The order should be vacated and the case remanded for further proceedings in accordance with this opinion. The plaintiff should have costs.
POTTER, J., concurred with McDONALD, J.