WEAVER *v.* BUDD MANUFACTURING CO.

1. WORKMEN'S COMPENSATION—DISABILITY COMPENSATION—LOSS OF A MEMBER.

   A claim for the statutory award for loss· of a member, such as an eye, arm, or a foot, is separate and distinct from a claim under the statute for workmen's compensation for disability from an injury not resulting in the loss of a member (2 Comp. Laws 1929, § 8426).

2. SAME—LOSS OF EYE—INDUSTRIAL VISION.

   An employee who has protective or peripheral vision, useful to him as industrial vision, is not entitled to the statutory award of workmen's compensation for the loss of an eye (2 Comp. Laws 1929, § 8426).

3. SAME—LOSS OF EYE—INDUSTRIAL VISION—WELDER.

   Evidence that plaintiff gun welder who suffered an injury to his right eye from coworker's gun that left him with a scar on his cornea which obstructed direct vision incapacitating him for welding but which left him with industrial vision supported finding of department that plaintiff was not entitled to the statutory award for the loss of an eye (2 Comp. Laws 1929, § 8426).

Appeal from Department of Labor and Industry. Submitted October 3, 1945. (Docket No. 27, Calendar No. 42,864.) Decided January 7, 1946.

Levi Weaver presented his claim for compensation against Budd Manufacturing Company, employer, for loss of an eye. Award to defendant. Plaintiff appeals. Affirmed.

*Harry H. Wachs,* for plaintiff.

*Kerr, Lacey & Scroggie,* for defendant.

STARR, J.   On February 20, 1941, while employed by defendant as a gun welder, plaintiff was injured by being struck in the right eye by sparks from a coworker's welding gun.   This injury resulted in a scarring of the cornea and diminished vision in the eye.   On November 12, 1943, he filed application with the department of labor and industry for adjustment of claim for "specific loss of industrial vision of right eye."   A deputy commissioner awarded him compensation of $18 a week for the period of 100 weeks from June 1, 1942, that being the statutory scheduled compensation for the "loss of an eye."   2 Comp. Laws 1929, § 8426 (Stat. Ann. § 17.160).*   On review the department reversed the deputy and denied compensation on the ground that plaintiff had not lost industrial vision in his right eye.   Having obtained leave, plaintiff appeals.

Said section 8426, which sets up a schedule of compensation for specific injuries, provides as follows:

"For the loss of an eye, 66⅔ per centum of average weekly wages (not exceeding $18 a week) during 100 weeks."

It should be kept in mind that a claim for the statutory award for loss of a member, such as an eye or an arm or a foot, is separate and distinct from a claim under the statute for compensation for disability from an injury not resulting in the loss of a member.   *Henderson* v. *Consumers Power Co.,* 301 Mich. 564.   In the present case plaintiff continued working for defendant and sustained no loss of wages.   He does not claim compensation for his injury under the general provisions of the compen-

---

* Later amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8426, Stat. Ann. 1945 Cum. Supp. § 17.160).

sation law, but claims the statutory scheduled award for the "loss of an eye."

The law is established that plaintiff was not entitled to the statutory award if he still had protective or peripheral vision which was useful to him as industrial vision. In *Henderson* v. *Consumers Power Co., supra,* we said, p. 580:

"Plaintiff's claim for such statutory schedule of compensation for 'loss of an eye' did not accrue until the protective or peripheral vision, which was useful as industrial vision, was completely lost."

In *Powers* v. *Motor Wheel Corporation,* 252 Mich. 639, 644 (73 A. L. R. 702), we said:

"Where sight is destroyed to the extent that no vision useful in industry remains, the eye is lost, even though some sight continues. But if any vision useful in industry remains, the eye is not lost."

See, also, *Banker* v. *Chevrolet Motor Co.,* 244 Mich. 1; *Crane* v. *Aetna Portland Cement Co.,* 234 Mich. 110; *Hayes* v. *Motor Wheel Corporation,* 233 Mich. 538; *Liimatta* v. *Calumet & Hecla Mining Co.,* 229 Mich. 41; *Stammers* v. *Banner Coal Co.,* 214 Mich. 215; *Purchase* v. *Grand Rapids Refrigerator Co.,* 194 Mich. 103.

The department made a finding of fact that plaintiff had not lost industrial vision in his right eye and, therefore, was not entitled to the scheduled award for the loss of an eye. The principal question presented on this appeal is whether or not there was material and competent evidence supporting this finding. Plaintiff testified that he received regular treatments for his eye injury at defendant's factory dispensary for about two weeks; that he continued working; and that he talked to defendant's factory representatives regarding compensation and was informed that because he had lost no time he

was not entitled to compensation. He further said that his eye healed but that the vision in it was blurred. In January, 1942, the eye became irritated, and defendant's doctor sent him to Dr. Dunlap, a specialist in the field of ophthalmology. Dr. Dunlap treated him from January to June, 1942, at which time he claims to have lost industrial vision in the eye.

Dr. Bentley, an eye specialist who examined plaintiff in December, 1943, testified that the vision in his left, or uninjured, eye was normal but that the center of the cornea of his right eye was scarred, which materially interfered with his vision. Although admitting that he had not checked the peripheral vision, Dr. Bentley stated that in his opinion plaintiff had lost industrial vision in his right eye. However, the doctor further testified that if he should lose the left, or normal, eye, the vision in the right eye was sufficient to enable him to walk about and do some types of work.

Dr. Dunlap, the specialist who treated plaintiff in 1942 and who examined him again in November, 1943, testified in part:

"*Q.* What did your examination disclose in November, * * * 1943?

"*A.* * * * The findings principally were one of a scar of the cornea. * * * This covered enough of the center to reduce his vision to 20/100. * * *

"*Q.* * * * If he lost his left eye, that is the uninjured eye, could he see to walk around with the right eye?

"*A.* * * * Certainly.

"*Q.* With 20/100 vision, could he do any work with that eye?

"*A.* Yes, he could do work.

"*Q.* Is it of any use to him in his protective vision?

"*A.* It is of use in protective vision. * * *

"*Q.* You consider that man (plaintiff) has lost industrial vision? * * *

"*A.* * * * He has not lost industrial vision. * * *

"The only thing I can interpret is that he would have a normal field of vision, in other words, the side vision, but this scar does blur the more straight ahead it is. * * *

"*Q.* Could you give us an opinion * * * whether or not this man has industrial vision? * * *

"*A.* Well, we have to think of this eye as having approximately 50 per cent. efficiency. * * *

"*Q.* Would you say that he has industrial vision for that kind of a job (welding)?

"*A.* I would say no, with that one eye.

"*Q.* Would you say he has industrial vision for other jobs in a factory?

"*A.* Oh, yes."

The evidence clearly establishes that plaintiff still had peripheral or protective vision in his right eye and that this was useful to him as industrial vision. We conclude that there was ample testimony supporting the finding of the department that he had not lost industrial vision. Therefore, under our holding in *Henderson* v. *Consumers Power Co., supra,* he was not entitled to the statutory scheduled award for the "loss of an eye."

The award of the department of labor and industry denying compensation is affirmed. Defendant may recover costs.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, REID, and NORTH, JJ., concurred.