DYER v. ABRASIVE DRESSING & TOOL CO.

1. WORKMEN'S COMPENSATION—EYE INJURY—LOSS OF VISION.

Provision of workmen's compensation act that for the purposes thereof "80 per cent. loss of vision of 1 eye shall constitute the total loss of that eye," is construed as meaning that if an employee has more than 20 per cent. of vision before an injury, but less than 20 per cent. remaining after the injury, he has sustained a total loss of the eye, but if he has more than 20 per cent. of vision remaining in the eye after injury he has not sustained total loss of the eye (2 Comp. Laws 1929, § 8426, as amended by Act No. 245, Pub. Acts 1943).

2. SAME—LOSS OF EYE—QUESTION OF FACT—DEPARTMENT OF LABOR AND INDUSTRY.

Where an employee claims workmen's compensation for the specific loss of an eye, it is a question of fact for determination by the department of labor and industry as to what percentage of vision the employee had before as well as after the injury in view of statute fixing definite standard for determining whether or not an eye is totally lost (2 Comp. Laws 1929, § 8426, as amended by Act No. 245, Pub. Acts 1943).

3. SAME—LOSS OF EYE—STATUTES.

In employee's proceeding to recover workmen's compensation for the specific loss of left eye, testimony supported finding of the department of labor and industry that he had lost more than 80 per cent. of the vision of such eye prior to his injury while in defendant's employ, hence he did not have a left eye to lose, within the meaning of the statute (2 Comp. Laws 1929, § 8426, as amended by Act No. 245, Pub. Acts 1943).

Appeal from Department of Labor and Industry. Submitted April 9, 1946. (Docket No. 21, Calendar No. 43,054.) Decided June 28, 1946.

Alvin C. Dyer presented his claim for compensation for loss of an eye against Abrasive Dressing & Tool Company, employer, and State Accident Fund, insurer. Award to defendants. Plaintiff appeals. Affirmed.

*Maurice Sugar* (*Benjamin Marcus* and *Jerome W. Kelman,* of counsel), for plaintiff.

*Harry F. Briggs* (*Henry A. Compeau,* of counsel), for defendant.

STARR, J. On October 9, 1943, while employed by defendant Abrasive Company as a lathe operator, plaintiff was struck in the left eye by a piece of steel. Several days later he obtained medical treatment for the injury. About three weeks later defendants sent him to an ophthalmologist at Harper hospital in Detroit, who examined him and determined that an injury to his left eye more than 20 years before had caused complete dislocation of the lens, and that he had had only light perception in the eye prior to the present injury. On the advice of the ophthalmologist the eye was removed to prevent sympathetic ophthalmia of the other eye. Plaintiff then filed claim for the statutory scheduled award for the loss of an eye under 2 Comp. Laws 1929, § 8426, as amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8426, Stat. Ann. 1945 Cum. Supp. § 17.160), which provides in part:

"For the loss of an eye, 66⅔ per centum of average weekly wages during 150 weeks (but not more than $21 a week); *for the purpose of this act 80 per cent. loss of vision of 1 eye shall constitute the total loss of that eye.*"

Defendants answered, denying "that plaintiff suffered any loss of vision in the left eye as the result

of any accident while in the employ of the Abrasive Dressing & Tool Company." Testimony was taken, and the deputy commissioner entered an award denying compensation. On review the department affirmed this award, and, having obtained leave, plaintiff appeals.

The statute quoted above provides a definite standard or basis to be used in determining whether or not there is total loss of an eye. We construe the statute to mean (1) that if an employee has more than 20 per cent. of vision in an eye before an injury, but less than 20 per cent. remaining after the injury, he has sustained an "80 per cent. loss of vision" or a total loss of the eye; and (2) that if an employee has more than 20 per cent. of vision remaining in an eye after an injury, he has not sustained "80 per cent. loss of vision" or total loss of the eye. Under the statute as thus construed, it is a question of fact for determination by the department as to what per cent. of vision an employee had in an eye before an injury and what per cent. he had after the injury. Our decisions relative to the total loss of an eye, prior to this amendatory statute in 1943, must be considered in the light of the amendment, which fixes a definite standard or basis for determining whether or not an eye is totally lost.

Plaintiff contends that the only question of fact before the department was whether or not he had "any useful vision remaining before the injury" on October 9, 1943. We cannot agree with this contention, because, under the statute as above interpreted, the question before the department was, what per cent. of vision did plaintiff have in his left eye before the injury? It is clear that if he had less than 20 per cent. of vision before the injury, he did not have an eye to lose within the meaning of the statute.

In its opinion the department made a finding of fact that plaintiff had lost more than 80 per cent. of vision in his left eye prior to his present injury. This was in effect a finding that he had less than 20 per cent. of vision in the eye before the injury and that he did not have an eye to lose within the meaning of the statute. The question before us on this appeal is whether or not there was competent evidence supporting the finding of the department.

There was sharp conflict in the testimony as to how much vision, if any, plaintiff had in his left eye before his injury on October 9th. He admitted that in 1922 or 1923, while working in a machine shop, he had been struck in his left eye by a piece of metal and that the eye became weak. However, he testified that after that injury he was able to see objects and colors, worked at divers occupations, and that, after being fitted with glasses in 1936, he was able to obtain a driver's license, drive a car, attend movies, read papers, repair clocks, radios, and washing machines, and do many other things. He also testified that in his work for defendant as a lathe operator he was able to read blue prints or sketches, read a micrometer with his left eye, and do fine machine work. Defendant's superintendent, who directed his work, testified that before the injury plaintiff was able to read sketches and do precision work in the machining of small tools. After removal of his left eye, plaintiff continued in defendant's employ, and its superintendent testified in substance that he was not able to do fine machining of tools and that he put him on rough work. However, plaintiff apparently suffered no loss in his earning capacity, as his wages prior to the injury were $1.15 an hour, and at the time of the hearing he was receiving $1.30 an hour.

Plaintiff's testimony relative to the amount of vision he had in his left eye before the injury on

October 9th is contradicted by the medical testimony presented at the hearing. The ophthalmologist at Harper hospital, who examined him a few weeks after his present injury, made a diagnosis that a previous injury to the eye, which had occurred more than 20 years before, had caused a dislocation of the lens into the anterior chamber and that the eye was blind. He testified in part as follows:

"I recommended enucleation of the eye   *   *   * as he had an early panophthalmitis with yellow reflection and a blind eye.   *   *   *

"Q. If Mr. Dyer testified that with the aid of glasses he was able to drive a car and see out of his left eye, he was able to attend movies and to see the movies, he was able to shave with a safety razor, able to carry on his work, would you say that was true?

"A. No, sir.   *   *   *

"Q. You are basing   *   *   *   your answers on the fact, doctor, that there was an old injury to that eye?

"A. An old injury.

"Q. And the condition that you saw in the left eye was not recent?

"A. It was not recent.

"Q. Mr. Dyer said further, doctor, that he could cover the right eye and he could read a newspaper and could read micrometers prior   *   *   *   to October 9th. Do you think that is possible with the condition you found in his eye?

"A. No, sir, it is impossible.   *   *   *

"Q.   *   *   *   What was the dislocation in the eye? Was it bad or was it just slight?

"A. It was complete. It was in the anterior chamber, and that is the part of the eye in front of the iris.   *   *   *

"Q. Did he have 20 per cent. of vision in that eye, in your opinion?

"A. No, sir.

"*The Commissioner:* How much would you say he had?

"*A.* Light perception only. * * *

"*The Commissioner:* Almost nil, is it?

"*A.* Almost nil."

The record of Harper hospital relative to plaintiff's examination in November, 1943, which was put in evidence, stated in part:

"Primary diagnosis, blind left eye. * * *

"Foreign body in O. F. 25 years ago. Blind in that eye for past 24 years. * * *

"Diagnosis: Blind left eye. Injury 24 years ago."

The record of a doctor who examined plaintiff while he was employed by another company in 1937 was put in evidence. This record stated in part: "Vision right eye 20/30; left eye, blind."

It appears that plaintiff had been examined at Harper hospital in 1930. This record, which was put in evidence, stated in part:

"His (plaintiff's) left eye is almost blind and has been that way for the past nine years, at which time he was injured by a rock. * * * The left eye has a blind, stary look, being opaque in consistency. It reacts slightly to light. * * * Has not been able to see with left eye for nine years. * * *

"X-ray * * * revealed the presence of a foreign body in the left eye near the posterior pole. * * *

"Films to show the left eye region * * * demonstrate the presence of a metallic foreign body about two millimeters in length, one-fifth of a millimeter in thickness."

From our examination of the record we conclude that there was competent testimony supporting the finding of the department that plaintiff had lost

more than 80 per cent. of the vision in his left eye prior to his injury on October 9, 1943, and that he did not have a left eye to lose, within the meaning of the statute.

The award of the department denying compensation is affirmed. Defendants may recover costs.

Carr, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred with Starr, J.

North, J. (*concurring in affirmance*). While, for the reason hereinafter stated, I am in accord with the result reached by Mr. Justice Starr, I disagree with his statement: "It is clear that if he (plaintiff) had less than 20 per cent. of vision before the injury, he did not have an eye to lose within the meaning of the statute." Immediately following the quoted sentence, Justice Starr says:

"In its opinion the department made a finding of fact that plaintiff had lost more than 80 per cent. of vision in his left eye prior to his present injury. This was in effect a finding that he had less than 20 per cent. of vision in the eye before the injury and that he did not have an eye to lose within the meaning of the statute."

When in this type of cases we refer to "the loss of an eye" we normally mean loss of the sight of an eye. *Rye* v. *Chevrolet Motor Co.*, 229 Mich. 39. If an employee has 19 per cent. vision in an eye and as such it is adequate for the requirements of his employment, and by reason of an injury arising out of and in the course of his employment he is totally blinded in that eye, surely he has suffered a personal injury and is entitled to compensation. But he could not be awarded compensation under Justice Starr's statement: "if he (the employee) had less than 20 per cent. of vision before the in-

jury, he did not have an eye to lose within the meaning of the statute."

In the provision of the workmen's compensation act under consideration the only pertinent change made by the 1943 amendment was the addition of the italicized words in the following:

"For the loss of an eye, 66⅔ per centum of average weekly wages during 150 weeks (but not more than $21 a week); *for the purpose of this act 80 per cent. loss of vision of one eye shall constitute the total loss of that eye.*" 2 Comp. Laws 1929, § 8426, as amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8426, Stat. Ann. 1945 Cum. Supp. § 17.160).

For reasons about to be noted, it seems clear that the added statutory provision means only that in case the injured person loses 80 per cent. or more of vision in an eye, the award shall be as for *the total loss* of the sight of that eye, notwithstanding there is not a total loss of sight. It does not mean that one who has defective vision in an eye to the extent that its efficiency is less than 20 per cent. (for example, 19 per cent., but still constituting industrial vision) may not recover compensation if he loses that industrial sight in consequence of an injury which arises out of and in the course of his employment. The statute does not provide that total loss of sight of an eye in which theretofore there was less than 20 per cent. of vision is not compensable; and courts are without power to modify the statute in that particular.

Another persuasive reason why the 1943 addition was made to the statute is that the legislature obviously sought thereby to obviate harsh and seemingly unjust decisions rendered under the statute as previously worded. For example, in *Crane* v. *Aetna Portland Cement Co.*, 234 Mich. 110, it was

held that loss of 87 per cent. of an employee's vision in an eye did not entitle him to compensation as for the loss of an eye.. And in *Powers* v. *Motor Wheel Corporation,* 252 Mich. 639 (73 A. L. R. 702), the employee lost 90 to 98 per cent. of vision in an eye, but still it was held that such was not total loss of vision and hence the employee could not be awarded compensation as for the loss of an eye. A headnote in the *Powers Case* reads:

"No specific award is allowable under workmen's compensation act for partial loss of eye, but such injury is compensable only under general provisions of act if it reduces earning capacity."

But obviously the 1943 addition to the quoted statutory provision now renders it possible to award full compensation "for partial loss of eye."

The above construction of the words added in 1943 to the statute need not lead to the conclusion that an employee may recover compensation twice for the loss of the same eye. It will be more appropriate to pass upon that question when, if ever, an employee who has already received full compensation for total loss of sight in an eye thereafter in consequence of a subsequent injury to the same eye seeks further compensation therefor.

I am unable to conclude that the legislature by enacting the 1943 addition to the previous statutory provision intended to thereby make the right of an employee to compensation for the loss of an eye more restricted, as would result from my Brother's construction. Prior to 1943 we had repeatedly affirmed specific compensation for the loss of an eye, notwithstanding sight in the eye had previously been seriously impaired. It was so held in *Purchase* v. *Grand Rapids Refrigerator Co.,* 194 Mich. 103, wherein as a result of his prior injury the employee had "just enough (vision) to distinguish daylight

from dark, or to tell an approaching object." There was a like holding in *Liimatta* v. *Calumet & Hecla Mining Co.*, 229 Mich. 41. In that case by previous accident the employee's "vision (was) seriously impaired * * * to an extent rendering it impossible' for him to see with that eye anything directly in front of him." In *Hayes* v. *Motor Wheel Corp.*, 233 Mich. 538, compensation for the loss of an eye was awarded by the commission upon the following finding: "We find that while the plaintiff had a defective eye caused by the injury received when he was a small boy and which greatly impaired his vision in this eye, yet he had some vision and some use of the eye previous to the instant accident." We affirmed the award for loss of an eye in each of the above cases, notwithstanding as Justice STARR now construes the statute, the employee "did not have an eye to lose." I am of the opinion that the 1943 modification of the statute was designed to broaden right of recovery for loss of an eye, not to restrict it.

It seems pertinent to note in the instant case that the opinion of the department was broader than indicated by my Brother's statement: "that plaintiff had lost more than 80 per cent. of vision in his left eye prior to his present injury." The department's finding was:

"The evidence discloses without question that plaintiff did not have industrial vision in his left eye at the time he started working for the Abrasive Dressing & Tool Company. In fact, at the time of Dr. Anslow's examination, plaintiff gave a history that he had been blind in the left eye for 24 years. * * * Based on the testimony of Dr. Anslow and the Harper Hospital records, we find that plaintiff had no industrial vision in his left eye at the time he was hired by Abrasive Dressing & Tool Company."

Based on the above finding, I concur in affirming the department's denial of compensation, with costs to defendants.

BUTZEL, C. J., concurred with NORTH, J.