HILTON v OLDSMOBILE DIVISION OF GENERAL MOTORS
CORPORATION

OPINION OF THE COURT

1. WORKMEN'S COMPENSATION—LOSS OF EYE.

Surgical removal of the natural lens is loss of an eye within the
meaning of a section of the workmen's compensation law (1956
PA 195, § 10).

2. WORKMEN'S COMPENSATION—SECOND INJURY FUND—TOTAL AND
PERMANENT DISABILITY.

Statute creating Second Injury Fund, as it read in 1964, allows an
employee to recover workmen's compensation for total and
permanent disability from that fund where the employee has
suffered loss of one member of his body from injuries related or
*unrelated* to employment and subsequently suffers loss of an-
other member from causes arising out of and in the course of
employment covered by the workmen's compensation law
(MCLA 412.8a).

3. WORKMEN'S COMPENSATION—TOTAL AND PERMANENT DISABILITY—
SECOND INJURY FUND—LOSS OF EYE—LOSS OF LEG.

Plaintiff is entitled to compensation for permanent and total
disability from the Second Injury Fund on the authority of
Michigan Supreme Court cases holding that surgical removal of
the natural lens is loss of an eye within the meaning of a
section of the workmen's compensation law, that the first
injury does not have to be employment related, and requiring
that the second injury be employment related where he under-
went a surgical bilateral cataract extraction at the age of ten
and later received an injury within the course of his employ-
ment resulting in the loss of industrial use of his left leg
(MCLA 412.8a; 1956 PA 195, § 10).

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 58 Am Jur, Workmen's Compensation § 301.
[2, 3] 58 Am Jur, Workmen's Compensation §§ 288, 301.
[5, 6] 58 Am Jur, Workmen's Compensation §§ 290, 301.

4. WORKMEN'S COMPENSATION—VISION—TOTAL LOSS.

The fact that vision can be corrected does not change the holding that there was a total loss, under the workmen's compensation law, by the surgical removal of the natural lens of plaintiff's eyes.

DISSENTING OPINION
M. S. COLEMAN, J.

5. WORKMEN'S COMPENSATION—LOSS OF EYE—LOSS OF VISION—GLASSES—INDUSTRIAL USEFULNESS.

*Loss of an eye means loss of the sight or vision of the eye under the workmen's compensation act; but if any vision useful in industry remains, the eye is not lost and if, by the aid of glasses, the vision may be increased to industrial usefulness, the eye is not lost unless the glasses will prevent useful coordination of the eyes.*

6. WORKMEN'S COMPENSATION—LOSS OF EYE—LOSS OF VISION—LENS—GLASSES—INCAPACITATION FOR WORK.

*The claim for workmen's compensation benefits for the loss of an eye where there is a partial loss of vision is analyzed by the Michigan Supreme Court upon the basis of the "vision" or "sight" remaining with the use of a lens and/or glasses; the findings have been based upon the ability to use the eye in the course of employment, the central question being whether the claimant is incapacitated for work.*

Appeal from Court of Appeals, Division 3, Holbrook, P. J., and T. M. Burns and Fitzgerald, JJ., denying application for leave to appeal from an order of the Workmen's Compensation Appeal Board. Submitted May 9, 1973. (No. 5 May Term 1973, Docket No. 54,322.) Decided September 18, 1973.

Claim by Arthur Hilton against Oldsmobile Division of General Motors Corporation and the Second Injury Fund for workmen's compensation. Award granted. Court of Appeals denied Second Injury Fund's application for leave to appeal. Second Injury Fund appeals. Award affirmed.

*Rapaport, Siegrist, Sablich & Mitchell,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *A. C. Stoddard,* Assistant Attorney General, for defendant Second Injury Fund.

WILLIAMS, J. Plaintiff underwent a surgical bilateral cataract extraction at the age of ten. Thereafter plaintiff could only differentiate between light and dark and detect some movement. However, with the aid of glasses and contact lenses his vision could be corrected to a 20/25 vision in each eye. Despite this handicap plaintiff worked for defendant from 1947 to 1964.

On November 17, 1964, plaintiff received an injury within the course of his employment resulting in the loss of industrial use of his left leg.

On August 20, 1969, the referee decided that plaintiff had lost his eyes within the meaning of *Lindsay v Glennie Industries, Inc,* 379 Mich 573; 153 NW2d 642 (1967), *prior* to the loss of his left leg so as to qualify him for differential benefits from the Second Injury Fund under the then worded MCLA 412.8a; MSA 17.158(1).[1]

On April 28, 1972, the Workmen's Compensation Appeal Board entered an opinion and order affirming the decision of the referee. The Court of Ap-

---

[1] At the time of the 1964 injury, § 8a read in part:

"If an employee has at the time of injury permanent disability in the form of the loss of a hand or arm or foot or leg or eye and at the time of such injury incurs further permanent disability in the form of the loss of a hand or arm or foot or leg or eye, he shall be deemed to be totally and permanently disabled and shall be paid, from the funds provided in this section, compensation for total and permanent disability after subtracting the amount of compensation received by the employee for both such losses. The payment of compensation under this section shall begin at the conclusion of the payments made for the second permanent disability."

peals denied leave on July 28, 1972. We granted leave on November 2, 1972. 388 Mich 793 (1972).

This case is controlled by *Lindsay, supra,* and *Whitt v Ford Motor Co,* 383 Mich 726; 178 NW2d 917 (1970), and we decide it within the specific limits of those two cases.

The *Lindsay* case decided two different points. First, in a case of "first impression", the "surgical removal of the natural lens * * * is loss of an eye within the meaning of the amended statute." (MCLA 412.10; MSA 17.160 as amended by 1956 PA 195.) Second, the removal was "made necessary by an injury arising out of and in the course of claimant's employment". 379 Mich 573, 578. In *Lindsay,* the loss of the eye was the only injury involved and thus had to be employment related in order for the claimant to recover for the specific loss.

In *Whitt,* this Court held that for compensation the second injury must be an injury arising out of and in the course of claimant's employment. We applied the reasoning of *Verberg v Simplicity Pattern Co,* 357 Mich 636; 99 NW2d 508 (1959) and stated:

"The creation of the Second Injury Fund under § 8a is a legislative limitation on the decision of *Weaver v Maxwell Motor Co., supra* [186 Mich 588; 152 NW 993 (1915)], insofar as it allows an employee to recover compensation for total and permanent disability from the Second Injury Fund where the employee has suffered the loss of one member from injuries related or *unrelated* to employment covered by the workmen's compensation law and subsequently suffers the loss of another member from causes arising out of and in the course of employment covered by the workmen's compensation law. To this extent it removes the effect of *Weaver.*" 383 Mich 726, 731. (Emphasis added.)

The second point decided in *Lindsay,* namely that the injury resulting in surgery was employment related is not to be construed as a specific limitation and requirement in all cases of bilateral cataract extraction. In *Lindsay* there was only one injury and in order to be compensable it had to be employment related and is not a specific limitation for that kind of loss.

In *Hilton,* the bilateral cataract extraction was the first of two injuries. The second injury was employment related, satisfying *Whitt. Verberg,* discussing the purpose behind the legislative creation of the Second Injury Fund, held the first injury did not have to be employment related. Hence, on the authority of *Lindsay* as to loss, *Verberg* as to first injury not having to be employment related, and *Whitt* requiring as is the case in *Hilton* that the second injury be employment related, we hold that plaintiff is entitled to compensation for permanent and total disability.

The Second Injury Fund argues that to allow recovery, whereas here the employee had lost vision due to a surgical bilateral cataract extraction, but could work due to glasses and contact lenses, here would mean that the employee would not be entitled to compensation if a subsequent eye injury left him with no corrected vision because he would be deemed to have already lost his sight. We recognize this argument might create a problem, but not being applicable to this case, we will resolve this issue when it comes before the Court.

Further, the *Lindsay* Court recognized:

"[T]hat substituting an artificial lens has 'restored' vision to the otherwise sightless eye. We point out that a specific loss award is not made as compensation for diminution of use of the involved organ or member. It is

not awarded to compensate for loss of earnings or earning capacity. It is awarded irrespective of either fact or both. If ophthalmological advances and refinements in the use of contact lens has in fact rendered the amended statute inconsonant with its original legislative intent, it is the province of the legislature to say so. We construe the statute in the plain meaning of its wording." 379 Mich 573, 578.

Thus the fact that vision can be corrected does not change the holding that there was a total loss caused by the surgical removal of the natural lens.

The order of the Workmen's Compensation Appeal Board is affirmed. No costs, a public question being involved.

T. M. KAVANAGH, C. J., and T. E. BRENNAN, SWAINSON, and LEVIN, JJ., concurred with WILLIAMS, J.

T. G. KAVANAGH, J., concurred in the result.

M. S. COLEMAN, J. *(dissenting)*. The facts are fairly stated in the majority opinion. Of particular import are the facts that plaintiff, when ten years old, had cataracts removed from both eyes, but continues to have 20/25 vision in each eye with the use of contact lenses and glasses. In 1964, he received a work-related injury resulting in the loss of industrial use of his left leg and claims benefits from the Second Injury Fund based upon that loss plus the earlier cataract removal.

The foregoing decision is said to be controlled by *Lindsay v Glennie Industries, Inc,* 379 Mich 573; 153 NW2d 642 (1967) and *Whitt v Ford Motor Co,* 383 Mich 726; 178 NW2d 917 (1970). I accept the decision in *Whitt,*[1] but not in *Lindsay*. Therefore,

---

[1] In *Whitt,* the worker lost one eye in a work-related injury and subsequently lost the other in a non-employment accident. This Court

this opinion is directed at the legal conclusion reached in *Lindsay* and the progression to the instant case.

The *Lindsay* Court, treating the fact situation "as one of first impression" held that "the surgical removal of the natural lens made necessary by an injury arising out of and in the course of claimant's employment is loss of an eye within the meaning of the amended statute." (p 578.) In reality, the question of what constitutes the "loss of an eye" within the meaning of the workmen's compensation act is one of venerable history and was not new to this Court. The act provides in MCLA 412.10(a)(16); MSA 17.160(a)(16) as follows:

"[F]or the purpose of this act 80% loss of *vision* of 1 eye shall constitute the total loss of that eye." (Emphasis added.)

The Second Injury Fund, created in 1943, MCLA 412.8a; MSA 17.158(1) provides:

"If an employee has at the time of injury permanent disability in the form of the loss of a hand or arm or foot or leg or eye and at the time of such injury incurs further permanent disability in the form of the loss of a hand or arm or foot or leg or eye, he shall be deemed to be totally and permanently disabled and shall be paid, from the funds provided in this section, compensation for total and permanent disability * * * ."

reversed an award made from the Second Injury Fund. Section 8a applies only if both injuries or the latter injury occurred while the worker was employed. As was said at 731-732:

"The legislature has not, except under § 8a, changed the rule that injuries to be compensable under the workmen's compensation law must arise out of and in the course of the claimant's employment. We conclude, therefore, that plaintiff is not entitled to total and permanent disability benefits from the Second Injury Fund because his second injury occurred after outright termination of the employer-employee relationship."

It is this conclusion in *Whitt* with which we agree.

Second Injury Fund argues that the loss of an eye must be interpreted as directed by MCLA 412.10(a)(16); MSA 17.160(a)(16) *supra (i.e.,* 80% loss of *vision)* and that plaintiff has 20/25 vision with lenses and glasses, the same as when he was hired. Plaintiff argues that, although that may be true, his vision without the use of the lenses and glasses qualifies him for payments from the fund.

It is important to review this question historically in order to determine what precedent may have evolved over the years and if it has developed an orderly and practical process. Sometimes precedent does not keep stride with changing times or newly-recognized needs and so there should be a departure. If such a departure is contemplated, future consequences and extensions should be considered lest the law "grow like Topsy".

As Justice Oliver Wendell Holmes said, "it is not enough to know where we stand. We must know where we are going."

At this point, however, I direct your attention to where we have been as to this question since the workmen's compensation act was enacted in 1912. Later, we should look towards where we are going.

A review of cases involving the "loss of an eye" reveal some which are only peripheral but more which develop the interpretation of the term as related to employment. All are relevant to the developing law.

*Weaver v Maxwell Motor Co,* 186 Mich 588; 152 NW 993 (1915) established a policy which this Court in *Whitt* correctly said was ameliorated by enactment of the Second Injury Fund. Plaintiff there suffered the loss of one eye in a work-related accident, prior to passage of the workmen's compensation law. He subsequently lost the other eye in another industrial accident. The Court said

total incapacity could not be attributed to the latter accident and thus awarded compensation based solely on the loss of the one eye, although he had no vision in either eye.

In *Cline v Studebaker Corp,* 189 Mich 514; 155 NW 519; 1916C LRA 1139 (1915), plaintiff lost 90% of his sight in an industrial accident. However, when fitted with glasses he had 50% of his original sight. The Court said the injury thus did not result in the loss of the eye and the statute did not provide compensation for partial loss. Similar is *Hirschkorn v Fiege Desk Co,* 184 Mich 239; 150 NW 851 (1915).

The Court relaxed the loss of an eye requirement in *Slinger v Muskegon Motor Specialties Co,* 201 Mich 473; 167 NW 949 (1918). Plaintiff had received an industrial injury to his left eye which left him with approximately 3% of normal vision. As a child he had injured his right eye so that he had only 20% effective vision. The Court said plaintiff should have been awarded compensation for the loss of the left eye because "the measure of vision" retained by the plaintiff was so slight. The Court speaks only of *vision* after much work by oculists as to both eyes. Also see *Stammers v Banner Coal Co,* 214 Mich 215; 183 NW 21 (1921) where plaintiff had 5% effective vision remaining.

A similar fact situation is seen in *Collins v Albert A. Albrecht Co,* 212 Mich 147; 180 NW 480 (1920) where plaintiff was awarded compensation for the loss of his right eye, although it was 25% effective. The Court said that the vision remaining was insufficient to enable plaintiff to work because he had previously lost the other eye. However, the Court did deny an award for total disability despite the fact that plaintiff had previously lost his left eye and was practically blind. The crux was

the effect of the loss upon his capacity to work at his occupation.

In *Rye v Chevrolet Motor Co,* 229 Mich 39; 201 NW 226 (1924), plaintiff had an eye removed which had been rendered sightless by a childhood accident. The Court reversed an award saying at 40–41:

"In using the words 'the loss of an eye' the legislature evidently intended the loss of the sight or vision of an eye rather than the loss of the physical eye. That this was the meaning intended by the legislature is made apparent by the fact that if the physical eye is seriously injured and the sight is not appreciably affected, there would not be the loss of an eye, whereas if the sight or vision is destroyed without a destruction of the physical eye, the loss of an eye, under the act, would be conceded. If this be the proper construction, the plaintiff had no left eye to lose when he began work for defendant. If he had no left eye within the meaning of the compensation law, he suffered no compensable loss when the physical eye was removed. He sees now as well as before, and the accident which occurred does not interfere with his work.

"The idea back of the compensation law is compensation for a loss to the employee by accident. To award plaintiff a sum of money when he has lost nothing is placing a burden upon industry which was never contemplated by the statute. The award made by the department of labor and industry should be vacated and set aside. No costs will be allowed."

Also see *Liimatta v Calumet & Hecla Mining Co,* 229 Mich 41; 201 NW 204 (1924) where the Court said that the loss of an eye *"may be tested by the permanent loss of all vision adequate for industrial pursuits."* (p 46.) (Emphasis added.) This was said to be a question of fact. This standard was followed in *Hayes v Motor Wheel Corp,* 233 Mich 538; 208 NW 44 (1926).

The plaintiff in *Suggs v Ternstedt Manufacturing Co,* 232 Mich 599; 206 NW 490 (1925) was awarded compensation for the loss of an eye. By the use of glasses plaintiff was able to see with the injured eye but was unable to coordinate it with the uninjured one. Because he could use but one eye at a time, the Court said he was entitled to compensation for one eye. Compare *Crane v Aetna Portland Cement Co,* 234 Mich 110; 208 NW 45 (1926) where compensation was denied. The plaintiff had 13% effective vision in the injured eye. The Court said plaintiff had "an injured eye the efficiency of which has been materially lessened, but it is still of beneficial service" and allows him to work at the same former employment (p 111).

In *Powers v Motor Wheel Corp,* 252 Mich 639; 234 NW 122; 73 ALR 702 (1931) plaintiff incurred an injury resulting in the removal of the lens from an eye. The Court affirmed denial of benefits for the loss of the eye. The majority's review of the cases disclosed the following principles pertinent to *Hilton* as listed at 644-645:

"Under the statute, loss of an eye means loss of the sight or vision of the eye. * * * However, loss of an eye does not require total loss of sight. Where sight is destroyed to the extent that no vision useful in industry remains, the eye is lost, even though some sight continues. But if any vision useful in industry remains, the eye is not lost. * * * *If, by the aid of glasses, the vision may be increased to industrial usefulness, the eye is not lost* * * * unless the glasses will prevent useful coordination of the eyes * * * ." (Emphasis added.)

Also see *Henderson v Consumers Power Co,* 301 Mich 564; 4 NW2d 10 (1942) and *Weaver v Budd Manufacturing Co,* 313 Mich 310; 21 NW2d 142 (1946). Compare *Lindhout v Brochu & Hass,* 255 Mich 234; 238 NW 231 (1931) where the Court

applied the holding in *Suggs* and distinguished *Powers* by saying here there was no "protective" vision and no coordination between the eyes when corrective glasses were worn and so he had the industrial use of only one eye.

In 1943 the Legislature amended the statute cited hereinbefore to provide that the loss of 80% of the vision of an eye would be deemed to be a total loss of the eye. In *Dyer v Abrasive Dressing & Tool Co,* 315 Mich 215; 23 NW2d 640 (1946), the Court said this about the amendment:

> "We construe the statute to mean (1) that if an employee has more than 20 per cent. of vision in an eye before an injury, but less than 20 per cent. remaining after the injury, he has sustained an '80 per cent. loss of vision' or a total loss of the eye; and (2) that if an employee has more than 20 per cent. of vision remaining in an eye after an injury, he has not sustained '80 per cent. loss of vision' or total loss of the eye." (p 217.)

The Court affirmed a denial of the award since plaintiff had lost more than 80% of vision prior to the accident. Compare *Marrs v Ford Motor Co,* 315 Mich 211; 23 NW2d 638 (1946) where the Court reversed a denial. Here plaintiff had a cataract removed prior to the injury but was able to see with the aid of glasses. Due to the industrial injury all vision was lost and incapable of restoration. The Court said the injury did, in fact, cause loss of sight. Also see *Alexander v Covel Manufacturing Co,* 336 Mich 140; 57 NW2d 324 (1953).

Attention is directed to the fact that in each case of partial loss of vision, the Court analyzes the claim for the "loss of an eye" upon the basis of the "vision" or "sight" remaining with the use of a lens and/or glasses. The findings have been based upon the ability to use the eye in the course of

employment, the central question being whether the claimant is incapacitated for work. In the instant case Mr. Hilton never was incapacitated for work in any way prior to his leg injury and is not visually incapacitated now.

After reading this array of cases, and noting the development by long precedent of the meaning of "loss of an eye," I cannot agree that *Lindsay* was a "case of first impression". On the contrary, I conclude that it is a departure from precedent. If so, then we must ask whether or not it was a wise one.

Because of a natural tendency to be sympathetic to an injured person, it is difficult to be objective and look to the legal, philosophical and practical results of such a case. But this we must do if we do not in our zeal "kill the goose that lays the golden egg". It is all too true that good intentions do not make good law.

To this end, the Second Injury Fund not only argued the plight of the fund if plaintiff suffered a subsequent injury which actually did destroy his vision, but proposed some logical extensions of such a finding as held in the majority opinion. For instance:

1. Does any kind of a childhood or birth injury, disease or defect of an eye which results in less than 20% vision, but which is corrected by glasses to 20/25 (or industrial use) immediately qualify a person for one injury—to wit: the loss of an eye?

(a) Query: How many persons now employed wear glasses to correct such poor sight in one or both eyes?

2. What of other operations or possibly internal deficiencies corrected by artificial devices? *i.e.,* Would a person with a well working steel joint acquired prior to employment, be eligible for com-

pensation from the Second Injury Fund if some other part of the body were injured?

One does not need much imagination to think of many comparable situations which logically could qualify under the *Lindsay* and *Hilton* opinions.

The Second Injury Fund was established during World War II under an impetus to hire the handicapped veterans returning from duty, and, of course, under a growing awareness that all handicapped people needed assistance towards employment. It was a fact of life that employers were reluctant to hire such persons realizing that the risk of further injury was higher and that possibly they would be charged for total disability in the event of a further single injury. The Legislature carefully defined what constituted the qualifications for benefits under the fund, the loss of an eye being one of the included injuries.

Common law established that the loss of an eye occurred with loss of vision which rendered the employee less useful or incapacitated for his or her work. The comparable cases equate vision with corrected vision and use of the eye in employment.

It is not difficult to understand that the statute defining the loss of an eye would also employ the historical as well as plain everyday meaning of the word "vision".

It is my opinion that *Lindsay* was incorrectly decided and that it must follow that *Hilton,* therefore, also departs from the precedent of this state. It is further my opinion that we are headed on a course which is not to the best interest of either the employers or employees and which has serious implications for all.