NULF v BROWNE-MORSE COMPANY

1. Workmen's Compensation—Second Injury—Statutes—Specific Losses—Compensability—Handicapped Workers.

The statutory criteria governing award of benefits under the second-injury provision of the Worker's Disability Act of 1969 are neither coextensive with nor circumscribed by the statutory criteria and concomitant case-law interpretations of the specific loss provision of the act; the ultimate test of compensability for second-injury purposes is whether the loss was a permanent disability within the legislative purpose of aiding the handicapped in obtaining and maintaining employment (MCLA 418.361[1] [1], 418.521; MSA 17.237[361] [1] [1], 17.237[521]).

2. Workmen's Compensation—Second Injury—Industrially Useful Vision—Corrected Vision.

A plaintiff who had had the natural lens of his eye removed via cataract surgery and thereafter possessed corrected industrially-useful vision in his eye prior to a work-related injury which resulted in total loss of sight in that eye may be found to have suffered a compensable second permanent injury within the legislative purpose of the second-injury provisions of the statute (MCLA 418.521; MSA 17.237[521]).

Appeal from Workmen's Compensation Appeal Board. Submitted March 2, 1977, at Grand Rapids. (Docket No. 28048.) Decided June 20, 1977.

Claim by Daniel Nulf against Browne-Morse Company, American Mutual Liability Company and the Second Injury Fund for workmen's compensation. Benefits granted. Defendant Second Injury Fund appeals by leave granted. Affirmed.

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 82 Am Jur 2d, Workmen's Compensation § 344.

*McCroskey, Libner, VanLeuven, Kortering, Cochrane & Brock* (by *Timothy J. Bott),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Eileen D. Zielesch,*Assistant Attorney General, for defendant, Second Injury Fund.

Before: R. M. MAHER, P. J., and D. E. HOLBROOK, JR. and J. T. LETTS,* JJ.

J. T. LETTS, J. Defendant Second Injury Fund appeals by leave granted from a February 26, 1976 order of the Workmen's Compensation Appeal Board affirming a September 28, 1972 referee's decision which awarded plaintiff differential benefits and total and permanent disability benefits pursuant to MCLA 418.521; MSA 17.237(521).

In May 1956 plaintiff was hired as a forklift operator by defendant Browne-Morse Company. Plaintiff in 1967 developed bilateral cataracts unrelated to his employment, and subsequent surgery resulted in removal of the natural lens of each eye. Corrective lenses restored visual acuity in plaintiff's right eye to 20/200 and afforded him better than 20/200 visual acuity in his left eye. He was then able to read small print, drive a motorcycle, and continue his employment with Browne-Morse.

On September 22, 1971 plaintiff sustained an injury arising out of and in the course of his employment when a board struck him on the side of the left eye, causing retinal detachment. Two subsequent eye operations were unsuccessful and left plaintiff with no sight in his left eye, while the visual efficiency of his right eye decreased to about

---

* Circuit judge, sitting on the Court of Appeals by assignment.

2%. Medical evidence indicates no likelihood of sight improvement in either eye.

Following a workmen's compensation hearing, the referee ordered Browne-Morse Company and its insurer, American Mutual Liability Company, to pay plaintiff benefits for 162 weeks from September 22, 1971 for loss of vision in his left eye. Defendant Second Injury Fund was required to pay differential benefits and total and permanent disability compensation pursuant to MCLA 418.521; MSA 17.237(521).[1] The Second Injury Fund appealed to the Workmen's Compensation Appeal Board and the board on February 26, 1976 affirmed the referee's decision.

The Second Injury Fund does not dispute the essential facts, but instead denies liability under MCLA 418.521(1); MSA 17.237(521)(1), arguing that because plaintiff had the natural lens of his left eye removed via cataract surgery in 1967, he at that time lost his left eye as a matter of law according to the "uncorrected vision" standard and therefore had no left eye to lose in the 1971 accident. *Hilton v Oldsmobile Division of General Motors Corp,* 390 Mich 43; 210 NW2d 316 (1973), *Lindsay v Glennie Industries, Inc,* 379 Mich 573; 153 NW2d 642 (1967).

The Second Injury Fund concedes that prior to

---

[1] MCLA 418.521(1); MSA 17.237(521)(1) provides:

"If an employee has a permanent disability in the form of the loss of a hand, arm, foot, leg or eye and subsequently has an injury arising out of and in the course of his employment which results in another permanent disability in the form of the loss of a hand, arm, foot, leg or eye, at the conclusion of payments made for the second permanent disability he shall be conclusively presumed to be totally and permanently disabled and paid compensation for total and permanent disability after subtracting the number of weeks of compensation received by the employee for both such losses. The payment of compensation under this section shall be made by the second injury fund, and shall begin at the conclusion of the payments for the second permanent disability."

plaintiff's September 22, 1971 accident his right eye was industrially useless, with best corrected vision in that eye of 20/200. The conceded effective loss of sight in plaintiff's right eye clearly constituted "a permanent disability in the form of the loss of [an] * * * eye" so as to satisfy the first loss requirement of MCLA 418.521(1); MSA 17.237(521)(1). Thus, the essential question posed by the present appeal is whether plaintiff's loss of corrected and industrially-useful vision in his left eye constituted "another permanent disability in the form of the loss of [an] * *. * eye" equivalent to a second loss under the second-injury provision and rendered the Second Injury Fund liable pursuant to that statute.

The Second Injury Fund argues that it is absolved of liability in this case because the specific-loss provision of the Worker's Disability Compensation Act of 1969, MCLA 418.361(1)(l); MSA 17.237(361)(1)(l),[2] as interpreted by *Hilton* and *Lindsay, supra,* to require 80% loss of vision *uncorrected,* means that plaintiff had already lost his left eye prior to the 1971 accident and therefore had no eye to lose to satisfy the second loss requirement of MCLA 418.521(1); MSA 17.237(521)(1). We regard this reasoning as unpersuasive. In *Hakala v Burroughs Corp (On Rehearing),* 399 Mich 162; 249 NW2d 20 (1976), the Michigan Supreme Court, in deciding what constitutes a first loss under the second-injury statute,

---

[2] MCLA 418.361(1); MSA 17.237(361)(1) provides in pertinent part:

"In cases included by the following schedule, the disability in each such case shall be deemed to continue for the period specified, and the compensation so paid for such injury shall be 2/3 of the average weekly wages for the loss of the following:

* * *

"(1) Eye, 162 weeks.

Eighty percent loss of vision of 1 eye shall constitute the total loss of that eye."

clearly indicated that the statutory criteria governing award of benefits under the second-injury provision of the act are neither coextensive with nor circumscribed by the statutory criteria and concomitant case-law interpretations of the specific-loss provision.

We regard the legal principles enunciated in *Hakala* to be applicable to the case at bar. As the *Hakala* Court noted, "[t]o merely state that the 'plain meaning' of the * * * statutory language, defining the loss of an eye as an '80% loss of vision', requires an uncorrected vision test for Second Injury Fund purposes ignores the act's silence on this point and eschews proper analysis". 399 Mich 162, 170 (1976). Rather, "[t]he Legislature has provided a general definition * * * for Second Injury Fund purposes * * * and [has] left to the courts the task of applying it to claims arising out of various factual situations". *Hakala, supra* at 171. For second-injury purposes, the "ultimate question is whether the * * * loss was a permanent disability within the *legislative purpose* of aiding the handicapped in obtaining and maintaining employment". *Hakala, supra* at 171–172. (Emphasis by the Court).

Prior to his 1971 injury plaintiff possessed corrected, industrially-useful vision in his left eye. Subsequent to the accident he lost all sight in that eye. There is no doubt that had plaintiff lost a hand, arm, foot, or leg instead of the vision in his left eye, the Second Injury Fund would have assumed its proper liability under MCLA 418.521; MSA 17.237(521) without contest. Pursuant to our task of applying to the particular facts of this case the legislatively-provided general definition of permanent disability in the form of the loss of an eye, we can discern no valid reason why the Second

Injury Fund should be allowed to avoid liability here by reliance upon the specific-loss provision of the act.

We hold that under the facts of this case the blindness caused to plaintiff's left eye by the 1971 injury constituted a second "permanent disability within the *legislative purpose* of aiding the handicapped in obtaining and maintaining employment". *Hakala, supra* at 171–172. The appeal board's affirmance of Second Injury Fund liability was therefore correct.

Affirmed.