NULF v BROWNE-MORSE CO

Docket No. 60021. Decided February 27, 1978. On application by
    defendant Second Injury Fund for leave to appeal the Supreme
    Court, in lieu of granting leave to appeal, affirmed the judg-
    ment of the Court of Appeals.

Daniel Nulf was awarded workmen's compensation benefits for
    the loss of vision in one eye against his employer, Browne-
    Morse Company, and its insurer, American Mutual Liability
    Company. The Workmen's Compensation Appeal Board also
    awarded the plaintiff differential benefits and compensation for
    total and permanent disability against the Second Injury Fund.
    The appeal board found that the plaintiff had lost the indus-
    trial use of his left eye as a result of an injury in the course of
    his employment. The plaintiff's natural lenses had been surgi-
    cally removed for causes unrelated to his employment, cata-
    racts, before his work-related injury, but corrective lenses
    restored the vision in his left eye to greater than 20% of
    normal vision, and he worked as a forklift driver and was a
    licensed driver before the industrial accident. The Second In-
    jury Fund argues that the "uncorrected vision" test at one time
    adopted by the Court requires a finding that, as a matter of
    law, the plaintiff had lost the vision in his left eye as a result of
    the cataract surgery and could not lose it again as a result of
    the work-related injury, and urges that the "uncorrected vi-
    sion" test be replaced by a "corrected vision" test. The Court of
    Appeals, R. M. Maher, P. J., and D. E. Holbrook, Jr., and Letts,
    JJ., affirmed (Docket No. 28048). Defendant Second Injury Fund
    applies for leave to appeal. *Held:*

Whether a loss is a permanent disability within the meaning
    of the statute creating Second Injury Fund benefits must be
    evaluated with reference to the underlying legislative purpose
    of aiding the handicapped in obtaining and maintaining em-
    ployment. It is uncontroverted that plaintiff was suffering from
    a permanent disability of the loss of his *right* eye at the time of
    the work-related injury. Corrective lenses provided him with
    industrial use of his *left* eye, but as a result of the work-related
    injury he lost all industrial use of both of his eyes. The
    Workmen's Compensation Appeal Board's determination that

the plaintiff's industrial injury rendered him permanently disabled is consistent with the sense of that term under the second-injury provisions of the statute.

Justice Coleman, concurring, wrote that corrected vision is the standard by which loss of an eye is to be measured in all workmen's compensation cases. Corrective lenses restored more than 20% vision in the plaintiff's eye after his surgery. As a matter of law he did not lose his left eye then and, therefore, had an eye to lose in the industrial accident.

The judgment of the Court of Appeals and the order of the Workmen's Compensation Appeal Board are affirmed.

76 Mich App 344; 256 NW2d 591 (1977) affirmed.

*Cholette, Perkins & Buchanan (Edward D. Wells,* of counsel) for defendants Browne-Morse Company and American Mutual Liability Company.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Eileen D. Zielesch,* Assistant Attorney General, for defendant Second Injury Fund.

PER CURIAM. In 1967 plaintiff developed bilateral cataracts from causes unrelated to his employment as a forklift driver with defendant Browne-Morse Company. As a result of those cataracts, the natural lens of each eye was surgically removed. The surgical removal of the natural lenses left plaintiff with less than 20% of normal vision in each eye. The use of corrective lenses restored the vision in plaintiff's left eye to greater than 20% of normal vision; however, the use of such lenses failed to restore the vision in the right eye to greater than 20% of normal vision. The corrective lenses not only enabled plaintiff to return to his job as a forklift driver for defendant employer, but also enabled plaintiff to drive his own truck and motorcycle on the public highways.

In 1971 plaintiff was struck by a board in the

area of the left eye while he was engaged in activities arising out of and in the course of his employment with defendant employer. As a result of that accident, plaintiff suffered a total loss of vision in the left eye and a further loss of vision in the right eye. Medical evidence established that there is no likelihood of improvement of the vision in either eye.

Defendant employer and its insurer voluntarily paid the specific loss benefits for the loss of vision of the left eye in accordance with the provisions of MCLA 418.361(1); MSA 17.237(361)(1). Defendant Second Injury Fund denied liability for payment of differential benefits and total and permanent disability compensation under the provisions of MCLA 418.521; MSA 17.237(521), arguing that, as a matter of law, plaintiff could not suffer a second loss of that eye as a result of the 1971 industrial accident.

Following a hearing, the workmen's compensation referee determined that plaintiff had lost the industrial use of his left eye as a result of the 1971 accident. The referee rejected the Second Injury Fund's argument that the "uncorrected vision" test of *Lindsay v Glennie Industries, Inc,* 379 Mich 573; 153 NW2d 642 (1967), mandated denial of differential benefits and total and permanent disability compensation pursuant to MCLA 418.521; MSA 17.237(521), and, therefore, ordered the fund to make such payments.

The Second Injury Fund appealed to the Workmen's Compensation Appeal Board. The appeal board affirmed the referee's decision, finding, as a matter of fact, that plaintiff had suffered a loss of industrially useful vision in his left eye as a result of the 1971 industrial accident. On leave granted, the Second Injury Fund appealed to the Court of

Appeals. The Court of Appeals affirmed the appeal board's decision on the authority of this Court's holding in *Hakala v Burroughs Corp (On Rehearing)*, 399 Mich 162; 249 NW2d 20 (1976). 76 Mich App 344; 256 NW2d 591 (1977).

The Second Injury Fund now argues in this Court that the use of the "uncorrected vision" test adopted by this Court in *Lindsay, supra,* and extended to Second Injury Fund cases in *Hilton v Oldsmobile Division of General Motors Corp,* 390 Mich 43; 210 NW2d 316 (1973), mandates the conclusion that plaintiff, as a matter of law, had lost the vision in his left eye in 1967 and could not lose it again as a result of the 1971 accident.

The fund does not seriously urge that the ultimate result of granting of Second Injury Fund benefits was contrary to the legislative intent underlying the creation of the fund. The fund has rather chosen this case as a vehicle by which it again urges that this Court repudiate the "uncorrected vision" test and replace that test with the "corrected vision" test.

In *Hakala v Burroughs Corp (On Rehearing),* *supra,* this Court recognized that the question of Second Injury Fund benefits in situations involving the loss of an eye could not be adequately resolved by the universal adoption of either the "uncorrected vision" test or the "corrected vision" test. The Court held that the question of entitlement to Second Injury Fund benefits must be determined by reference to the statutory language creating those benefits found in MCLA 418.521; MSA 17.237(521), which requires a determination of whether the employee has suffered a "permanent disability in the form of the loss of a[n] * * * eye". The determination of whether a loss is a permanent disability within the meaning of that section

must be evaluated in terms of the underlying legislative purpose of aiding the handicapped in obtaining and maintaining employment.

It is uncontroverted that plaintiff was suffering from a permanent disability in the form of the loss of his right eye at the time of the 1971 accident. It is further uncontroverted that at the time of the 1971 accident the use of corrective lenses provided plaintiff with industrially useful vision in his left eye and that the 1971 accident resulted in his loss of all industrial vision. Since it is clear that plaintiff had industrially useful vision in his left eye prior to his 1971 accident and that he lost that industrially useful vision as a result of the accident, the appeal board's determination that plaintiff's 1971 loss of vision in the left eye rendered him permanently disabled is consistent with the sense of that term as it is used in MCLA 418.521; MSA 17.237(521).

In lieu of granting leave to appeal, pursuant to GCR 1963, 853.2(4), the judgment of the Court of Appeals and the order of the Workmen's Compensation Appeal Board are affirmed.

KAVANAGH, C. J., and WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.

COLEMAN, J. *(concurring).* I believe that corrected vision is the standard by which loss of an eye is to be measured in all workers' compensation cases for the reasons explained in the dissent in *Hakala v Burroughs Corp (On Rehearing),* 399 Mich 162, 172–175; 249 NW2d 20 (1976), and *Hilton v Oldsmobile Division of General Motors Corp,* 390 Mich 43, 45–56; 210 NW2d 316 (1973). Corrective lenses restored more than 20% vision in plaintiff's left eye after his 1967 operation. As a consequence, plaintiff at that time did not lose his left

eye as a matter of law and therefore had an eye to lose in the 1971 accident. On this basis I agree that the Second Injury Fund should be required to pay differential benefits and total and permanent disability compensation pursuant to MCLA 418.521; MSA 17.237(521).